VIRGIE M. TYSINGER, EXECUTRIX OF GEORGE E. TYSINGER, v. COBLE DAIRY PRODUCTS, A COPARTNERSHIP COMPOSED OF GEORGE S. COBLE, MAE C. COBLE AND FRANK BUCK, TRUSTEE.

(Filed 17 December, 1945.)

**1. Negligence § 17a—**

　　Negligence is not to be presumed from the mere fact of injury or that testator was killed.

**2. Negligence § 5—**

　　In an action to recover damages for wrongful death allegedly resulting from actionable negligence, the plaintiff must show: First, that there has been a failure on the part of defendant to exercise proper care in the performance of some legal duty which defendant owed plaintiff's testator under the circumstances in which they were placed; and second, that such negligent breach of duty was the proximate cause of the injury which produced the death—a cause that produced the result in continuous

sequence, and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such result was probable under the facts as they existed.

**3. Negligence § 19a: Trial § 22a—**

There must be legal evidence of every material fact necessary to support a verdict. If the evidence fails to establish any one of the essential elements of actionable negligence, the judgment of nonsuit must be affirmed. Whether there is enough evidence to support a material issue is a matter of law.

**4. Automobiles § 18a: Negligence § 5—**

Where the violation of a statute relative to the operation of a motor vehicle upon the highway is negligence *per se*, such violation must be a proximate cause of injury to become actionable.

**5. Automobiles § 18c: Negligence § 17a—**

The operator of a motor vehicle on a public highway may assume and act upon the assumption that a pedestrian will use reasonable care and caution commensurate with visible conditions, and that he will observe and obey the rules of the road.

**6. Automobiles §§ 18c, 18g—**

In an action by plaintiff to recover damages for the wrongful death of plaintiff's testator as a result of alleged negligence, where plaintiff's evidence tended to show that plaintiff's testator was struck and killed by defendant's truck, in crossing a highway from a neighbor's to his own home, at a point other than a marked cross-walk and not within an unmarked cross-walk at an intersection, there being at the point of crossing an unobstructed view of the road from three hundred yards to a quarter of a mile in the direction deceased was facing and from which the truck was approaching, without evidence of anything to give notice to the operator of the truck that deceased was unaware of its approach and would not obey the law of the road and without evidence as to how close the truck was to him when he started across—except that deceased was hit by the side of the truck near the center of the highway, there is no evidence that the driver of the truck failed to exercise due care to avoid colliding with deceased or from which to infer that a failure to give warning by sounding the horn was a proximate cause of the collision, and there is evidence of contributory negligence in deceased's failure to yield the right of way, and judgment of nonsuit was proper.

APPEAL by plaintiff from *Olive, Special Judge,* at February Term, 1945, of DAVIDSON.

Civil action to recover for alleged wrongful death, G. S., 28-172, *et seq.*

Plaintiff in her complaint alleges actionable negligence. Defendant answering denies material allegations of complaint, and pleads contributory negligence of plaintiff's intestate.

From the pleadings it appears that these facts are uncontroverted: (1) About 3 :30 o'clock p.m. on 21 March, 1944, George E. Tysinger, who resided on the north side of U. S. Highway No. 29, about three miles south of Thomasville in Davidson County, North Carolina, was killed when stricken by a loaded truck of defendants, operated by Richard Draughan as their agent and employee on their business, as he, the said Tysinger, was in the act of crossing the said highway from the south side thereof to, and in front of his home on the north side. (2) Said highway curves to "the left just beyond and northeast of the said Tysinger home." (3) On said date the highway was "smooth and dry." And (4) plaintiff, Virgie M. Tysinger, is the duly qualified executrix of George E. Tysinger, deceased.

And on the trial below the evidence offered by plaintiff tends to show these facts: The highway from Lexington toward Thomasville at the point in question is 22 feet wide with shoulders on each side estimated by one witness to be 6 to 8 feet in width, and by another from 9 to 14 feet. The defendant's truck was traveling from the direction of Lexington toward Thomasville. To one so traveling, the Tysinger home is on the left of the highway. On the opposite or right side of the highway is the R. W. Everhart home, which is nearer to Thomasville than is the Tysinger home. The edge of the porch of the Everhart home is about 9 feet from the right edge of the hard surface of the highway. In going from the Everhart home to the front of Tysinger home, "to cross straight," one would have to walk up the highway a little toward Lexington and then cross. From the Everhart home, according to testimony of Mr. Everhart, "You can see a quarter of a mile down towards Lexington. There is no obstruction." According to another, "The driver driving the Coble truck . . . could see a man on the highway in front of or near the Tysinger home a distance of approximately 300 yards." And in the judgment of another, "As you approach the Tysinger home toward Thomasville the driver of the truck can see about 300 yards."

Mr. Everhart, who was the only eyewitness, testified: "I lived sort of right in front of George Strange's (referring to deceased) house . . . I saw deceased standing in my yard talking. It was just a little before it happened. I started to my porch when it happened. I looked around and saw Mr. Strange (referring to deceased) going across the road, and the side of the truck hit him . . . He was walking pretty rapid. I didn't hear any sound or signal from the truck. I didn't hear any brakes applied . . . When I first saw the truck it was cutting over kind of left toward Thomasville. It knocked it up the road just a piece— about thirty feet. The body was lying just above my house—right in the center of the road . . . the truck was making pretty rapid speed." And on cross-examination, this witness continued: "I was talking to George

Strange (again referring to deceased) in my front yard on the left side next to Lexington . . . I was standing right at edge of my porch when I was talking to Strange . . . When I stopped talking to Strange I turned toward Thomasville, going around the side of the house. When I got to the corner I turned and looked. The contact was to the side of the truck. Q. When you looked you saw Mr. Strange starting across the highway? A. Yes, sir. Q. And you saw him continue across the highway into the side of the truck? A. When I got the glance of it he was right in the center of the road. Q. You saw him starting across the road when you first looked? A. Yes, sir. Q. He kept going right into the side of the truck? He walked right into the side of the truck, didn't he? A. The side of the truck hit him. Q. The contact was on that side of the truck? A. Yes, sir."

The witness R. L. Lopp testified: "I have a saw mill there on the right hand side of the highway as you go toward Thomasville. It is about 100 yards from the highway. From the saw mill you cannot see the highway right in front of George's home, but just a little beyond you can see it. I was at the saw mill under the planer shed . . . when George Tysinger was killed. This planer shed is an open shed . . . I heard the truck coming and it hit something; it made a thud like, and I looked up and saw the truck swerving across the road and it was on the shoulder. I saw the truck on left side of the highway . . . going toward Thomasville . . . After hearing it approach, and after hearing a thud, I looked around and saw the truck. In my opinion the truck was running 45 miles per hour. Then I walked on up the road. At the time I heard the truck, I don't recall hearing any sound (of a horn or brakes) at all, only some old cans or something made a powerful racket in the truck. When I looked around and saw it, the truck was moving at a high rate of speed and turning crossways and it was twisting about and it was going off the highway. When I saw the truck it was on a fill from the highway . . ."

Then on cross-examination, the witness continued: "The shoulders were muddy and soft and the hard surface dry . . . The mill is lower than the highway. You have to go down a hill from the highway to get to the mill. The Everhart home is between the saw mill and the highway . . . The first thing I observed was a thud—a noise as if something was struck. It attracted my attention. Up to that time I was cleaning up in the shed . . . I did not look up till I heard the thud. I couldn't say what happened before then. I don't know where Mr. Tysinger was before the thud."

Plaintiff further offered evidence tending to show blood stains and glass on the pavement near the center line of the highway "approxi-

mately in the middle of the road"; that marks on the highway "started about the center of the right hand side, the center between the center line and the edge of the paving and . . . cut across the center mark in the direction of the truck"; and that the truck came to rest with its rear wheels on the left shoulder and one front wheel on the pavement. And with respect to the marks: The witness N. R. Kinney, who says that he is a civil engineer, and that he came upon the scene while the Coble truck was there on the left hand side of the road toward Thomasville, testified: "I saw black marks on the highway which led in the direction of the truck a distance of about 100 feet . . . Deep ruts were cut in the dirt on the soft shoulder of the highway behind the truck. The best I remember about 6 inches deep, the deepest part. These furrows ran toward the truck or behind it from 10 to 12 feet . . . There was a fill where the truck was standing . . . I made some notes of what I saw. There was a mail box there 9 steps from where Coble's truck was standing. It was 27 steps from the mail box to where the marks begun on the highway."

And the witness Everhart testified: "I saw the marks of the truck wheels . . . on the highway. These marks cut over to the left of the hard surface, over kind of to the left of the road toward my mail box. The truck made the marks. From first to last, the marks went about 30 feet."

Also, the witness Lopp, testifying thereto, said: "The rear of the truck was right on the edge of the fill, but the front part was turned a little toward the highway. The dirt shoulder was soft. I would call it muddy. On the left shoulder I saw ruts about 6 inches deep leading 20 or more feet up to the truck. There were marks that started from the right side of the highway and going diagonally across the highway toward the left side and finally went plumb across the road on the shoulder . . . right up to Coble's truck. Where I first saw the marks it was, I reckon, 150 feet to Coble's truck . . ."

There is also evidence tending to show the body of the truck was wider than the cab.

Plaintiff having introduced evidence and rested, defendant moved for judgment as in case of nonsuit. The court, being of opinion that the motion ought to be allowed, entered judgment in accordance therewith, and dismissed the action.

Plaintiff appeals therefrom to the Supreme Court and assigns error.

*W. H. Steed and Phillips & Bower for plaintiff, appellant.*
*McCrary & DeLapp for defendant, appellee.*

WINBORNE, J.  Plaintiff's challenge to the correctness of the judgment as of nonsuit from which this appeal is taken raises for decision two questions:

1. Taking the evidence shown in the record in the light most favorable to plaintiff, as we must do in considering judgments as in case of nonsuit, is there sufficient evidence of actionable negligence on the part of defendant to require the submission to the jury of an issue with respect thereto?

2. If so, upon all the evidence, was the plaintiff's testator guilty of contributory negligence as a matter of law?

We are of opinion and hold that the evidence fails to show actionable negligence against the defendant.  But if it be conceded that it does make such a case, we are of opinion and hold, as a matter of law, that upon all the evidence shown in the record, the plaintiff's testator was negligent, and that such negligence was a proximate or contributing cause of his injury and death.

Negligence is not to be presumed from the mere fact of injury or that testator was killed.  *Mills v. Moore,* 219 N. C., 25, 12 S. E. (2d), 661, and cases cited.  See also *Pack v. Auman,* 220 N. C., 704, 18 S. E. (2d), 247; *Mitchell v. Melts,* 220 N. C., 793, 18 S. E. (2d), 406.

In an action for recovery of damages for wrongful death allegedly resulting from actionable negligence, the plaintiff must show: First, that there has been a failure on the part of defendant to exercise proper care in the performance of some legal duty which the defendant owed plaintiff's testator under the circumstances in which they were placed; and second, that such negligent breach of duty was the proximate cause of the injury which produced the death—a cause that produced the result in continuous sequence, and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such result was probable under the facts as they existed.

There must be legal evidence of every material fact necessary to support a verdict, and the verdict "must be grounded on a reasonable certainty as to probabilities arising from a fair consideration of the evidence, and not a mere guess, or on possibilities."  23 C. J., 51.  *Mitchell v. Melts, supra,* and cases there cited.  If the evidence fails to establish either one of the essential elements of actionable negligence, the judgment of nonsuit must be affirmed.  Whether there is enough evidence to support a material issue is a matter of law.  *Mitchell v. Melts, supra.*

It is appropriate, therefore, to consider the evidence in the light of the various acts of negligence alleged in the complaint and charged against defendant as having proximately caused the injury and death of plaintiff's testator.

First.  It is alleged that defendant failed in its duty to equip the truck with adequate brakes and to keep in "good working order" such brakes

in violation of provisions of G. S., 20-124 (a). This statute requires that every motor vehicle when operated upon a highway to be equipped with brakes adequate to control the movement of and to stop such vehicle, and that such brakes shall be maintained in good working order. A violation of this statute is negligence *per se*, but such violation must be a proximate cause of injury to become actionable. However, there is no evidence pertaining directly to the brakes on the truck in the present case. And in the absence of evidence as to nearness of the truck to plaintiff's testator when he entered the highway, no reasonable inference may be drawn from the attendant circumstances as to condition of the brakes on the truck.

Second. It is alleged defendant violated the provisions of G. S., 20-141 (b) 3, and of G. S., 20-141 (c), pertaining to speed restrictions, in that it operated the loaded truck at time and place at a speed of more than thirty-five miles per hour, and in that driver failed to decrease speed in going around a curve, when special hazard existed with respect to pedestrians so as to avoid striking the testator. The statutes referred to provide: That where no special hazard exists a speed of thirty-five miles per hour for motor vehicles designed, equipped for, or engaged in transporting property shall be lawful, but any speed of such motor vehicles in excess of thirty-five miles per hour shall be *prima facie* evidence that the speed is not reasonable or prudent and that it is unlawful; and the fact that the speed of a vehicle is lower than the foregoing *prima facie* limit shall not relieve the driver from the duty to decrease speed when going around a curve, or when special hazard exists with respect to pedestrians, and that speed shall be decreased as may be necessary to avoid colliding with any person on or entering the highway in compliance with legal requirements and the duty of all persons to use due care.

In this connection, the evidence fails to show that the truck was traversing a curve as it approaches the scene of the collision with testator. Moreover, the only evidence as to the rate of speed at which the truck was traveling related to the speed of the truck after the collision.

In the light of admitted facts as to length of marks on the shoulder of the highway and the point at which the truck came to rest, the suggestion of a speed of forty-five miles per hour as the truck was leaving the highway and going on the shoulder, is contrary to human experience. *Ingram v. Smoky Mountain Stages, Inc., ante,* 444, 35 S. E. (2d), 337. The physical facts "speak louder than words." *Powers v. Sternberg,* 213 N. C., 41, 195 S. E., 88.

Also, in this connection, the statute pertaining to the rights and duties of pedestrians in crossing roadways at other than cross walks, section 135 of chapter 407, Public Laws 1937, now G. S., 20-174, provides that: (a) Every pedestrian crossing a roadway at any point other than within

a marked cross walk or within an unmarked cross walk at an intersection shall yield the right of way to all vehicles upon the roadway; and that (d) it shall be unlawful for pedestrians to walk along the traveled portion of any highway except on the extreme left-hand side thereof, and such pedestrian shall yield the right of way to approaching traffic. On the other hand, in subsection (e) of G. S., 20-174, it is provided that "notwithstanding the provisions of this section, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway, and shall give warning by sounding the horn when necessary, and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a roadway."

And there is another principle of law applicable to the situation here in hand, that is, that "one is not under a duty of anticipating negligence on the part of others, but in the absence of anything which gives or should give notice to the contrary, a person is entitled to assume, and to act upon the assumption that others will exercise care for their own safety," 45 C. J., 705. Indeed, the operator of a motor vehicle on a public highway may assume and act upon the assumption that a pedestrian will use reasonable care and caution commensurate with visible conditions, and that he will observe and obey the rules of the road. See *Reeves v. Staley,* 220 N. C., 573, 18 S. E. (2d), 239, and authorities there cited. See also *Hobbs v. Coach Co., ante,* 323.

In the light of these principles it was the duty of plaintiff's testator, in crossing the highway at a point other than within a marked cross walk or within an unmarked cross walk at an intersection, to yield the right of way to defendant's truck approaching upon the roadway, and the operator of the truck, in the absence of anything which gave or should have given notice to the contrary, was entitled to assume and to act upon the assumption that plaintiff's testator would use reasonable care and caution commensurate with visible conditions, and that he would observe and obey the rules of the road. Applying this principle: There is evidence that the highway toward Lexington from which direction the truck was traveling, was visible from three hundred yards to a quarter of mile. And the evidence indicates that in going from the Everhart home to testator's home, testator would be facing the direction from which the truck was approaching. And there is no evidence of anything that gave or should have given notice to the operator of defendant's truck that plaintiff's testator was unaware of the approach of the truck, and would not obey the rule of the road, until the time the testator started across the highway, nor is there evidence as to how close the truck was to him when he started across—except the fact that he was stricken by the side of the truck near the center of the highway. Under such circumstances, to infer that the operator of the truck failed to

exercise due care to avoid colliding with the testator upon the roadway, or to infer that a failure to give warning by sounding the horn was a proximate cause of the collision between the truck and testator, or to infer that the driver of the truck failed to exercise proper precaution upon observing testator upon the roadway in confused state, would be mere speculation. Verdicts may not be predicated upon speculation. *Mitchell v. Melts, supra.*

Third. The next act of negligence alleged is that defendant violated the provisions of G. S., 20-146, as to duty to drive on right half of the highway, and of G. S., 20-150 (d), forbidding the driving on left side of center line of highway. The latter statute, however, relates to driving on the left side of the center line of highway upon the crest of a grade or upon a curve in the highway, which are conditions the evidence fails to show here. The former statute provides that "upon all highways of sufficient width, except upon one-way streets, the driver of a vehicle shall drive the same upon the right half of the highway . . . unless it is impracticable to travel on such side of the highway . . ." A violation of this statute would be negligence *per se,* but to be actionable, such negligence must be a proximate cause of the injury. However, the evidence here discloses marks on the highway indicating that before reaching the scene of the collision the truck was traveling on the right half of the highway. The course of the marks, and the testimony of the eyewitness Everhart make it apparent that the turn of the truck to left and across the center line was in an effort to avert the collision. As was said by *Barnhill, J.,* in *Ingram v. Smoky Mountain Stages, Inc., supra,* speaking to a similar situation, "It is a human instinct when a collision is impending between two vehicles to turn or cut away from the other vehicle. The evidence here discloses that it was done in an effort to avoid the collision. There is no circumstance tending to show that it was other than what a man of reasonable prudence would have done."

Fourth. The last act of negligence alleged is that defendant violated the provisions of G. S., 20-140, pertaining to reckless driving, in that the truck of defendant was operated carelessly and heedlessly in willful and wanton disregard of the rights and safety of others, at a speed and in a manner to endanger or be likely to endanger person and property and by operating same to the left, when by the exercise of proper care, he could have turned to the right where there was ample space to safely pass without striking plaintiff's testator.

In this respect, and in the light of the rights of parties respectively, and of the duties imposed by law upon each, as hereinabove discussed, the evidence is too speculative and uncertain to support this allegation.

Now, then, as to the alleged contributory negligence of plaintiff's testator, it is sufficient to say that in crossing the highway at a point other

than a marked cross walk or within an unmarked cross walk at an inter-
section it was his duty to yield the right of way to all vehicles upon the
highway. G. S., 20-174 (a). The highway was visible, according to all
the evidence, for at least three hundred yards in the direction from
which the truck of defendant was approaching. And in leaving the point
where he was talking to witness Everhart to go toward his home, he
necessarily faced in the direction of the oncoming truck. He must have
seen the truck, and taken the chance of crossing, or, have been inatten-
tive to the duty imposed upon him by law, and started across without
looking for vehicles on the highway. In either event, a reading of the
evidence leads to the conclusion, as a matter of law, that his own con-
duct contributed to his injury and death, unfortunate and regrettable
as it may be.

The judgment below is
Affirmed.