BILLIE JAMES BARBEE v. THOMAS O. PERRY AND WIFE, HAZEL PERRY.

(Filed 28 June, 1957.)

**Automobiles § 42k—**

Evidence tending to show that plaintiff attempted to cross the street between intersections where there was no marked crosswalk, that he saw a car approaching from his right traveling at a lawful speed in its proper lane, that plaintiff, notwithstanding, continued on his way and speeded up a little bit because he wanted to cross in front of the oncoming car, and was struck by the car just before he reached the far curb, *is held* to disclose contributory negligence on his part barring recovery as a matter of law.

JOHNSON, PARKER, and BOBBITT, JJ., dissent.

APPEAL by plaintiff from *McKeithen, Special J.,* at November 1956 Civil Term of DURHAM.

Civil action to recover for personal injury resulting from alleged actionable negligence of defendants.

The case on appeal discloses that the occurrence out of which this action arises took place on Geer Street in the city of Durham. This street runs in general east-west direction, and is 28 feet wide and is straight in both directions from point in question.

Plaintiff, as witness for himself, gave this narrative: (Direct examination) "On November 16, 1951, I was working at Weeks Motor Company . . . on the north side of Geer Street. The used car lot is on the south side of Geer Street. I was working over there . . . in the used car lot—Well, they had a repossessed automobile over there . . . and they wanted me to go over and start it and I went over . . . I carried a bottle of gas over . . . I took the gas to pour in the carburetor because the car had set there a while. I found that the battery was dead on it and started back to get someone to carry a battery over there. I carried the gas back with me because that was orders we had . . . never to leave any setting on the used car lot.

"The first thing I did, I walked out to the curb there and looked to the left to see if there was anyone coming that way, and I looked up to the right then, took a step out, looked back to the left. I glanced back up to the right there and seen a car that was coming. It was something about 300 feet up the street, and I proceeded to go on across there and I looked back the next time after I got about middle way and it was somewhere, I would say, in the neighborhood of about 200 feet down the street there. The car was going west. I started on across going to the north side of the street . . . I never completed it . . . I got to the north curb and started to make a complete step. In other words, had my right foot placed on the curb when something hit my left leg on the inside just above the ankle in there, and turned me right around and I went up in the air. When I came down that's the last of it till after about four or five days. Well, it was about six days before I came to my senses like I ought to . . . I didn't hear any horn or anything of that sort. No, sir, no cross walk anywhere along there . . . I had a broken left leg, etc."

And on cross-examination plaintiff, after describing the locale, testified: "This happened between 1:30 and 1:55. The weather was clear, it was in the daytime, and the street was dry . . . There was no obstruction at all in Geer Street anywhere along there to obstruct my view of an automobile coming from the east on Geer Street . . . I had been over to the used car lot a dozen times that morning . . . There were no lines, either solid or dotted . . . for walking across Geer Street anywhere between Madison Street and Rigsbee Avenue . . . Rigsbee Avenue does not cross Geer Street, but if the line of Rigsbee Avenue were extended to the north side the Weeks Motor Shop is west of where Rigsbee Avenue would come into Geer Street . . . I attempted to cross Geer Street in the middle of the block, or near the middle . . . because it was more convenient going back. I was going to Weeks Motor Company, which is west of Rigsbee Avenue.

"When I started back to the shop . . . when I got to the curb on the south side of Geer Street after coming out of the used car lot, I stopped. I looked to my left, that is, down the street toward the west. I did not see anything coming up the street from the west. I then looked to the east. I saw a car up at the school house about two blocks away. I glanced back to the left. The car was 300 feet or better away when I was standing on the curb.

"I took a step out from the curb, glanced to the left and glanced back at that car, which was on my right and coming in my direction. The second time I glanced I was one step from the curb on the south side of Geer Street, and I would say that the car was about 275 feet up to the right on Geer Street when I looked back, 250 to 275 feet, then I walked on out in the street. The first time I looked at the car I was on the

curb. The second time I looked at it I was one step from the curb, and I would say . . . it was about 200 feet. The only time between the first time and the second time I looked was the length of time it took me to take one step off the curb, and I kept walking . . . right on across the street . . . I did not stop when I got to the middle of the street. When I got to the middle of the street I looked back up to the right . . . the car was about 150 feet away from me . . . I just kept walking right on across the street . . . toward the north side . . . The car was coming toward me on its right-hand side of the north side of the street . . . I never saw the car again after I saw it 150 feet away from me. I went right on to the curbing then. I didn't look at it any more after I saw it 150 feet away. The car was coming toward me, it was traveling in its proper lane or the north lane of Geer Street. I didn't see the car any more from the time I was half-way in the street until I was struck when I was stepping on the curbing . . . I walked in front of the lane in which the car was traveling . . .

"After I seen the car when I was in the middle of the street, I sort of stepped up and speeded up a little bit and then went on across . . . I hurried up a little because I wanted to get across in front of the oncoming car . . ."

Again referring to Mrs. Perry, plaintiff testified: "I wouldn't say she was violating any speed law . . . There was nothing to keep me from seeing her, or her from seeing me."

The witness Sam L. Holder testified that he saw the collision between Billie Barbee and a motor vehicle; that from where he was it was about 160 feet, and that the car was being driven within 12 inches of the curb.

Defendants, reserving exception to the overruling of their motion for judgment as of nonsuit when plaintiff concluded the offering of testimony, offered evidence tending to wholly controvert the plaintiff's theory as to how the collision took place, and rested their case. Plaintiff offered other witnesses. Then both plaintiff and defendants rested. Thereupon defendants renewed their motion for judgment as of nonsuit. The motion was allowed. And to judgment signed in accordance therewith, plaintiff excepted and appeals to the Supreme Court, and assigns error.

*Arthur Vann for Plaintiff Appellant.*
*Bryant, Lipton, Strayhorn & Bryant for Defendants Appellees.*

WINBORNE, C. J. The sole assignment of error presented on this appeal, other than those relating to exceptions to formal matters, is based upon exception to the action of the trial court in granting defendants' motion for judgment as of nonsuit.

DENNING *v.* GAS CO.

In this connection, if it be conceded that the evidence shown in the case on appeal, taken in the light most favorable to plaintiff, as is done in considering its sufficiency to take the case to the jury on the issue as to negligence of defendants, as alleged in the complaint, the testimony of plaintiff clearly shows that he failed to exercise reasonable care for his own safety, under the circumstances, that is, that he was negligent, as a matter of law, and that such negligence contributed to, and was a proximate cause of any injury he sustained. *Tysinger v. Coble Dairy Products*, 225 N.C. 717, 36 S.E. 2d 246; *Garmon v. Thomas*, 241 N.C. 412, 85 S.E. 2d 589.

It is provided by statute, G.S. 20-174(a) that "Every pedestrian crossing a roadway at any point other than within a marked crosswalk . . . shall yield the right of way to all vehicles upon the roadway." Here, though plaintiff saw defendant's automobile approaching, he concedes that in operating the automobile *feme* defendant was not violating any speed law, and was traveling in the proper lane. And, using plaintiff's language, he "speeded up a little bit and then went on across." He said "I hurried up a little bit because I wanted to get across in front of the oncoming car." Such conduct is not in keeping with the rule of the prudent man. He took his chance, and lost.

Hence the judgment as of nonsuit was properly entered, and is

Affirmed.

JOHNSON, PARKER, and BOBBITT, JJ., dissent.