**Joseph P. GRISANTI, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 1939.**

United States District Court
E. D. North Carolina,
Raleigh Division.

May 2, 1968.

---

J. Allen Adams, of Young, Moore & Henderson, Raleigh, N. C., for plaintiff.

Gerald L. Bass, Asst. U. S. Atty., Eastern District of North Carolina, Raleigh, N. C., for defendant.

## ORDER

HEMPHILL, District Judge.

This cause was tried before this court without a jury on April 23, 1968, in Raleigh, North Carolina. The court, after hearing witnesses for plaintiff and defendant, and having read the contentions of the parties, makes the following:

### FINDINGS OF FACT

This is an action for personal injuries instituted under the Tort Claims Act, 28 U.S.C.A. Sections 1346, 2671 et seq. The plaintiff, Joseph P. Grisanti, was injured on May 12, 1966, when he collided with a 1964 Ford automobile owned by the defendant and operated by its agent and servant, Joseph E. Carter. It is stipulated that the accident occurred on May 12, 1966, at about 8:30 p. m. on Peace Street in the City of Raleigh, North Carolina, when plaintiff, a pedestrian, was struck by defendant's automobile and was injured. Joseph E. Carter was operating defendant's automobile in the course and scope of his employment at the time of the collision. Peace Street runs in an east-west direction and is separated in the middle by a white line. Motor vehicles are operated in both directions on this street. The street is 38 feet wide.

The credible evidence reflects that on May 12, 1966, at approximately 8:30 p. m., Joseph E. Carter was operating a 1964 Ford in a southerly direction on North Person Street in the City of Raleigh, North Carolina. North Person Street runs in a north-south direction and intersects Peace Street. Mr. Carter made a right turn from North Person Street on to Peace Street. He was heading in a western direction on Peace Street approaching North Blount Street. North Blount Street runs in a north-south direction and is parallel to North Person Street. There is an electrically-operated stop light at the intersection of Peace Street and North Blount Street. This light turns from green to yellow to red. This light was operating on May 12, 1966, at approximately 8:30 p. m. A short distance after passing the in-

tersection of Peace Street and North Blount Street, Harp Street intersects Peace Street. There is not a stop light at this intersection. The various witnesses described it as a small street with a stop sign to help control the flow of traffic. Harp Street does not continue across Peace Street in a southerly direction. It comes to a dead end at Peace Street.

Peace Street continues in a western direction until it intersects Wilmington Street. This intersection is one city block from the intersection of Peace and North Blount Streets. There is an electrically-operated control light at the intersection of Wilmington and Peace Streets. The traffic light turns from green to yellow to red. This light was operating on May 12, 1966, at approximately 8:30 p. m. Carter made a right turn from North Person Street to North Blount Street. It appears that when he first turned right on Peace Street, the light at the intersection of Peace and Blount Streets was red for his lane of travel. He stated that the traffic light turned to green and he proceeded through the intersection at Peace and North Blount Streets, that his speed was approximately 15 miles an hour and in no respect was it over 20 miles an hour. The posted speed limit on Peace Street is 35 miles an hour.

Carter proceeded though the intersection of Peace and Blount Streets. It was dark at this hour of the evening and he had his lights on, was looking straight ahead as he went through the intersection. He did not see any pedestrians on or near the intersection. After passing through the intersection, he felt his automobile collide with "something." He immediately stopped his car and found the plaintiff lying in the street near the northern curb of Peace Street.

From the intersection at Peace and North Blount Streets you have an unobstructed view as you look east and west on Peace Street. As you look east on Peace Street from the intersection of North Blount Street, you can see where Peace Street comes to a dead end at North Person Street. At this point, Peace Street is straight and visibility is good. As you look west on Peace Street from the intersection, you have an unobstructed view for a number of blocks. From the intersection of Peace and North Blount Streets one can see the stop light at Wilmington Street and also at Salisbury Street.

A Mr. and Mrs. George Barbour testified for the defendant. Both testified that they were traveling in an automobile being operated by Mr. Barbour, and were following the automobile being operated by Mr. Carter. Mrs. Barbour testified that Mr. Carter's car had passed through the intersection and was two or three car lengths from the intersection when she saw the government car strike someone. Mr. Barbour also stated that Mr. Carter's car was past the intersection before colliding with the plaintiff. Mr. Barbour stated that his speed was not in excess of 20 miles per hour. Both witnesses testified that Mr. Barbour turned his car to the right and parked parallel to the north curb of Peace Street. Plaintiff was lying in front of their car. A police car operated by W. G. Arnold later was parked to the rear of Mr. Barbour's car. Both of these witnesses testified that they did not see any pedestrians on or about the intersection of Peace and North Blount Streets. They also testified that other cars were traveling on Peace Street.

Raleigh Police Officer Arnold testified that he received a call at 8:37 p. m. to investigate the accident. He arrived at the accident scene approximately five mintues later, and found plaintiff lying in the north lane of Peace Street, 44 feet from the west curb of North Blount Street. Carter had stated that the plaintiff was 40–50 feet from the west curb of North Blount Street. Miss Anne Daniel, plaintiff's witness, testified that she measured the distance from where plaintiff was lying to the west curb of North Blount Street and found the distance to be 67 feet. Officer Arnold further testified that Mr. Carter's car was parked in the right lane of Peace Street and was

approximately 30 feet from the plaintiff. He further testified that both lights at North Blount and Wilmington Streets were functioning on the night in question and that there were not any pedestrian crosswalks between North Blount and Wilmington Streets. Carter had testified that there were not any crosswalks between these two intersections. Anne Daniel testified that she had lived all of her life in the house on the northwest corner of Peace and North Blount Streets and that there were no crosswalks between North Blount and Wilmington Streets. She also testified that a pedestrian had an unobstructed view as you look east and west on Peace Street. This testimony was credible, corroborative.

The plaintiff testified that he was crossing Peace Street from south to north at the time of the accident. He stated on cross-examination that he looked both east and west on Peace Street before entering the intersection. He further stated that after entering the intersection he did not look either east or west again. He was looking straight ahead with his head down as it was "natural for him to do this."

There is no credible evidence that Carter was speeding, and the court finds as a fact that he had a green light as he passed through the intersection of Peace and Blount Streets. Plaintiff was apparently crossing at some place other than at the intersection. Carter's brakes were apparently in good order.

The facts do not reveal that Carter could or should have seen plaintiff. The Barbours did not see him. It appears that his use of the street at other than a crosswalk or intersection made it difficult to see him.

Plaintiff did not cross Peace Street when a red light was facing traffic on Peace Street, but crossed when the traffic light was green facing Peace Street and red facing Blount Street. Plaintiff testified he saw the lights of a car approaching from east to west on Peace Street. There is no testimony plaintiff thereafter took any precaution. Plaintiff's clothing was exhibited to the court,[1] but there was no evidence that this materially affected the issue of fact revolving around Carter's failure to see plaintiff.

–AND–
## CONCLUSIONS OF LAW

**A.** Plaintiff has the burden of proving his right to recovery by the preponderance or greater weight of the evidence. As a matter of law, the court concludes plaintiff has failed to discharge this responsibility by credible evidence. Defendant has no duty to prove plaintiff's lack of right of recovery.

**B.** North Carolina General Statutes § 20–174 sets out the duties and rights of pedestrians in crossing streets. That statute reads as follows:

(a) Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway.

(b) Any pedestrian crossing a roadway at a point where a pedestrian tunnel or overhead pedestrian crossing has been provided shall yield the right-of-way to all vehicles upon the roadway.

(c) Between adjacent intersections at which traffic control signals are in operation pedestrians shall not cross at any place except in a marked crosswalk.

(d) It shall be unlawful for pedestrians to walk along the traveled portion of any highway except on the extreme left-hand side thereof, and such pedestrians shall yield the right-of-way to approaching traffic.

(e) Notwithstanding the provisions of this section, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway, and shall give warning by sounding the horn when necessary,

---

1. A patch from the shirt worn by plaintiff at the time was introduced into evidence.

and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a roadway.

C. Section 21–14(1) of the City Code of Raleigh provides:

(1) "GO" or a green light. Vehicular traffic facing the signals may proceed straight through, or unless a sign or arrow and light prohibit such turn, may turn right or left. Vehicular traffic shall yield the right of way to other vehicles and to pedestrians lawfully within the intersection at the time such signal is exhibited.

D. Tysinger v. Coble Dairy Products, 225 N.C. 717, 36 S.E.2d 246 (1945), is a leading case in North Carolina on crossing a road or street at a place other than a marked crosswalk. In *Tysinger,* the testator was crossing an open highway. The evidence reflected that he was hit by defendant's vehicle in the center of the highway. There was testimony that the view was unobstructed in the direction from which the defendant was coming. The trial court entered a directed verdict for the defendant at the close of plaintiff's evidence. The North Carolina Supreme Court affirmed the lower court's ruling, and stated:

In an action for recovery of damages for wrongful death allegedly resulting from actionable negligence, the plaintiff must show: First, that there has been a failure on the part of defendant to exercise proper care in the performance of some legal duty which the defendant owed plaintiff's testator under the circumstances in which they were placed; and second, that such negligent breach of duty was the proximate cause of the injury which produced the death—a cause that produced the result in continuous sequence, and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such result was probable under the facts as they existed. Id. at 722, 36 S.E.2d at 249.

And in addition stated:

And there is another principle of law applicable to the situation here in hand, that is, that 'one is not under a duty of anticipating negligence on the part of others, but in the absence of anything which gives or should give notice to the contrary, a person is entitled to assume, and to act upon the assumption that others will exercise care for their own safety.' 45 C.J., 705. Indeed, the operator of a motor vehicle on a public highway may assume and act upon the assumption that a pedestrian will use reasonable care and caution commensurate with visible conditions, and that he will observe and obey the rules of the road. (Citations omitted.)

In the light of these principles it was the duty of plaintiff's testator, in crossing the highway at a point other than within a marked crosswalk or within an unmarked crosswalk at an intersection, to yield the right of way to defendant's truck approaching upon the highway, and the operator of the truck, in the absence of anything which gave or should have given notice to the contrary, was entitled to assume and to act upon the assumption that plaintiff's testator would use reasonable care and caution commensurate with visible conditions, and that he would observe and obey the rules of the road. * * * Id. at 724, 36 S.E. 2d at 251.

Now, then, as to the alleged contributory negligence of plaintiff's testator, it is sufficient to say that in crossing the highway at a point other than a marked crosswalk or within an unmarked crosswalk at an intersection it was his duty to yield the right of way to all vehicles upon the highway. G.S. § 20–174(a). The highway was visible, according to all the evidence, for at least three hundred yards in the direction from which the truck of defendant was approaching. * * * He must have seen the truck, and taken the chance of crossing, or have been inattentive to the duty imposed upon

him by law, and started across without looking for vehicles on the highway. In either event, a reading of the evidence leads to the conclusion, as a matter of law, that his own conduct contributed to his injury and death, unfortunate and regrettable as it may be. Id. at 725–726, 36 S.E.2d at 251, 252.

In Garmon v. Thomas, 241 N.C. 412, 85 S.E.2d 589 (1955), the plaintiff was struck by a motor vehicle as he crossed an open highway. The highway was level and one could see 700 to 1000 feet in the direction from which the defendant's truck was driven. The plaintiff testified that he looked and did not see the truck and that he did not see it until it was 5 feet from him. The North Carolina Supreme Court held that the plaintiff was contributorily negligent as a matter of law and reversed a verdict awarding damages to plaintiff.

E. The recent case of Price v. Miller, 271 N.C. 690, 157 S.E.2d 347 (1967), reviews all of the significant North Carolina cases concerning the rights and duties of pedestrians under N.C. General Statutes 20–174. In Price the plaintiff was crossing an open highway at night. The highway was straight and level. The defendant's car lights were on and the weather was clear. The Supreme Court ruled that the plaintiff was guilty of contributory negligence as a matter of law. The court further stated:

If defendant were negligent in not seeing plaintiff intestate, who was dressed in dark clothes, in whatever length of time he might have been in the vision of her headlights, then plaintiff's intestate must certainly have been negligent in not seeing defendant's vehicle as it approached, with lights burning, along the straight and unobstructed highway.

We must conclude that plaintiff's intestate saw defendant's automobile approaching and decided to take a chance of getting across the road ahead of it, or in the alternative, that he not only failed to yield the right of way to defendant's automobile, but

by complete inattention started across the highway without looking.

In any event, the only conclusion that can be reasonably drawn from plaintiff's evidence is that plaintiff's intestate's negligence was at least a proximate cause of his death. Id. at 696, 157 S.E.2d at 351.

For other cases concerning N.C. General Statutes § 20–174, see Templeton v. Kelley, 216 N.C. 487, 5 S.E.2d 555 (1939); Griffin v. Pancoast, 257 N.C. 52, 125 S.E.2d 310 (1962); Jenkins v. Thomas, 260 N.C. 768, 133 S.E.2d 694 (1963); Blake v. Mallard, 262 N.C. 62, 136 S.E.2d 214 (1964); Barbee v. Perry, 246 N.C. 538, 98 S.E.2d 794 (1957); Holloway v. Holloway, 262 N.C. 258, 136 S.E.2d 559 (1964); Wise v. Tarte, 263 N.C. 237, 139 S.E.2d 195 (1964); and Nix v. Earley, 263 N.C. 795, 140 S.E.2d 402 (1965).

F. The physical evidence does not corroborate the plaintiff's version of the accident. It is not controverted that the intersections at Peace and North Blount Streets and Peace and Wilmington Streets were controlled by traffic lights on May 12, 1966, at approximately 8:30 p. m. This being true, plaintiff could not cross the street between North Blount and Wilmington Streets without yielding the right of way to motor vehicles. Yet, plaintiff's own witness, Anne Daniel, stated that plaintiff was lying 67 feet from the intersection of Peace and North Blount Streets. The police officer testified that the plaintiff was lying 44 feet from that intersection. Mr. and Mrs. Barbour, defendant's witnesses, both testified that the defendant's car was past the intersection when it struck the plaintiff. There is evidence tending to show that two cars were parked between plaintiff and the west curb of North Blount Street following the accident. It is inconsistent with human experience to believe that plaintiff was knocked such a distance when all of the available evidence indicates that the defendant's car was traveling between 15 and 20 miles per hour. The only logical conclusion is that the plaintiff was not

crossing Peace Street at the intersection, as he alleged and testified. It would defy the law of nature to infer that he was.

G. Another part of plaintiff's testimony demands careful scrutiny. He testified that he was crossing Peace Street from the south to the north. Yet, defendant's car received damage to the fender, hood and windshield on the right side. If the plaintiff was crossing the street from the driver's left, the impact would have knocked the plaintiff to the driver's right, or in a northern direction. It is unreasonable and illogical to believe that the plaintiff was knocked back on the car if he had been traveling in a northern direction. If plaintiff's version is to be believed, then the court must find that the following events happened:

(1) Plaintiff was crossing Peace Street in a south to north direction— he was crossing from the driver's left to his right.

(2) The plaintiff was struck by the right fender, hood and windshield of defendant's car as the plaintiff walked in a northern direction.

(3) When defendant's vehicle struck plaintiff, it threw him back on the hood instead of in a northern direction.

All of the above events would allegedly occur even though all of the available evidence indicates that defendant's car was being operated at a speed of 15 to 20 miles an hour.

H. If plaintiff's version is to be believed, he was crossing the street at an intersection controlled by a traffic light and he did not look for oncoming traffic after entering the street. The physical evidence shows that plaintiff was crossing Peace Street between North Blount and Wilmington Streets. There was not a marked crosswalk at the point where he attempted to cross Peace Street.

I. Conceding, arguendo, that defendant's agent was negligent in the operation of defendant's automobile, the plaintiff is still not entitled to recover. As the Supreme Court stated in Price v.

Miller, supra, "In any event, the only conclusion that can be reasonably drawn from plaintiff's evidence, is that plaintiff's intestate's negligence was at least a proximate cause of his death."

Furthermore, there is not a scintilla of evidence in the record to show that the defendant's agent was negligent. There has not been a showing by plaintiff that Mr. Carter was negligent in the operation of the motor vehicle in any respect. As the North Carolina Supreme Court stated in Tysinger v. Coble Dairy Products, supra, Mr. Carter was not under a duty of anticipating negligence on the part of others. Mr. Carter had a right to assume that a pedestrian would not run or walk directly into his path. He surely had a duty to plaintiff if he had become aware of plaintiff's presence. However, Mr. Carter and Mr. and Mrs. Barbour all testified that no one of them observed a pedestrian on or near the intersection of Peace and North Blount Streets.

J. The plaintiff alleged that the defendant had the last clear chance to avoid the accident. The plaintiff, of course, has the burden of proving that the defendant in fact had the last clear chance to avoid the accident. Mercer v. Powell, 218 N.C. 642, 12 S.E.2d 227 (1940). As the North Carolina Supreme Court so aptly stated in Wise v. Tarte, supra, if liability is to be imposed, the defendant must have the last clear chance to avoid the injury. The plaintiff has not shown in this case that the defendant had a "clear chance" to avoid the accident. In fact, all of the evidence shows that Mr. Carter had no chance at all to avoid the accident. Without the showing of an opportunity, the doctrine of last clear chance cannot be invoked in North Carolina, the doctrine cannot be applied if the contributory negligence of the plaintiff continued up to the moment of the accident which caused the injury. Temple v. Hawkins, 220 N.C. 26, 16 S.E. 2d 400 (1941). On the facts before the court, the negligence of the plaintiff continued until the time of the accident and the doctrine of last clear chance is inap-

plicable. For other decisions on last clear chance in North Carolina, see Volume III, N.C. Index, Negligence, P. 455.

K. There is a lack of credible evidence plaintiff was negligent, that such negligence was the proximate cause of injury to plaintiff. Even if defendant (Carter) were negligent, the accident would not have occurred except for the contributing, concurring negligence of plaintiff, of such degree and import as to deny plaintiff recovery.

–THEREFORE–

The Clerk will enter judgment for defendant.

And it is so ordered.