LAURA TAYLOR HONEYCUTT, BY HER NEXT FRIEND, A. A. HONEYCUTT, PLAINTIFF v. JERRY WAYNE STRUBE AND RALPH NEIL STRUBE, DEFENDANTS.

AND

A. A. HONEYCUTT, PLAINTIFF v. JERRY WAYNE STRUBE AND RALPH NEIL STRUBE, DEFENDANTS.

(Filed 17 January 1964.)

1. **Automobiles § 38—**

Evidence disclosing that the attention of the witness was attracted to a car with a loud muffler which passed her home a quarter of a mile from the scene of the collision, that no other car with a loud muffler passed her home that morning, and that the collision occurred shortly thereafter, with evidence tending to identify the car she saw with that driven by defen-

dant, *is held* to render competent her testimony from her observation of the car as to its speed.

**2. Automobiles § 41b—— Evidence of excessive speed constituting proximate cause of injury held sufficient to take the issue to the jury.**

The accident in suit occurred immediately north of a one-way bridge on a two-lane highway, between a car driven south by plaintiff and a car driven north by defendant. Opinion testimony as to the speed of defendant's car immediately prior to the collision together with testimony as to the physical facts at the scene immediately after the collision, *held* sufficient to show that defendant was operating his car at an excessive and unlawful speed and that notwithstanding he saw, or by the exercise of due care should have seen, plaintiff's car in motion or standing on the north side of the bridge, defendant did not bring his car under control but continued across the bridge at such unlawful speed until the moment of collision, and that such negligence was a proximate cause of the collision.

**3. Negligence § 21——**

The burden is upon defendant to prove contributory negligence.

**4. Automobiles § 44——**

Where the physical facts at the scene of the collision permit inferences that immediately before the impact plaintiff's car was on its right side of the highway and also that it was to the left of its center of the highway, there being no eyewitness to the collision, the position of plaintiff's car immediately prior to the collision rests in mere surmise, and the evidence is insufficient to be submitted to the jury on the contention that plaintiff was guilty of contributory negligence in failing to keep her car on the right side of the highway, and therefore any error in the court's instruction upon the issue of contributory negligence is harmless upon defendant's appeal.

APPEAL by defendants from *Olive, Emergency Judge,* February 1963 Civil Session of CABARRUS.

These civil actions, consolidated for trial, grow out of a collision that occurred September 6, 1960, about 11:00 a.m., between a 1950 Chevrolet (Honeycutt car) and a 1956 Ford (Strube car). The Honeycutt car was owned by A. A. Honeycutt and was being operated by his wife, Laura Taylor Honeycutt. The Strube car was owned by Ralph (Neil) Strube and was being operated by his minor son, Jerry (Wayne) Strube.

The pleadings establish the following facts: The collision occurred in Cabarrus County, North Carolina, on a paved two-lane highway known as Roberta Mill Road, which extends between the Roberta Mill community (Roberta) and Concord. This highway, at the place where the collision occurred, runs generally north-south. The Honeycutt car was proceeding in a southerly direction approaching (*from* the direction of Concord) the bridge (approximately sixteen feet wide) across

Meadow Branch. The Strube car, proceeding in a northerly direction *toward* Concord, crossed the Meadow Branch bridge and collided with the Honeycutt car at a point north of the bridge. At each end of the bridge, and some distance therefrom, the State of North Carolina had erected a sign bearing the legend, "One Lane Bridge"; and one of these signs was visible to drivers approaching the bridge from each direction. In approaching the bridge *from the south*, "there is a curve to the right and then a downgrade for several hundred feet . . . before reaching the bridge."

Mrs. Honeycutt's action is to recover damages for serious and permanent injuries she sustained as a result of said collision. Her husband's action is to recover (1) damages for alleged destruction of the Honeycutt car and (2) for amounts he paid or is obligated to pay for expenses (hospital, medical, nursing, drugs, special equipment) necessarily incurred by him in connection with the care and treatment of his wife.

The complaints contain identical allegations as to the alleged actionable negligence of defendants. Each plaintiff alleged the collision and resulting injuries and damages were proximately caused by the negligence of defendants in that Jerry Strube, in approaching and crossing the bridge and in colliding with the Honeycutt car, operated the Strube car (1) at excessive and unlawful speed; (2) failed to keep a proper lookout; (3) failed to keep his car under proper control; (4) failed to drive on his right half of the highway; and (5) in general, under existing conditions, operated his car in a reckless and heedless manner.

In each action, Jerry Strube, by his guardian *ad litem*, Ralph Strube, and Ralph Strube, individually, filed joint answers. They denied all allegations as to the alleged actionable negligence of Jerry Strube. Conditionally, they pleaded contributory negligence, alleging as a basis for such plea that the collision was proximately caused by the negligence of Mrs. Honeycutt in that (1) she failed to drive her car on her right half of the highway, (2) failed to keep a proper lookout and (3) failed to keep her car under proper control.

Counterclaims alleged by defendants are not now involved. A settlement thereof was made, without the consent or approval of plaintiffs, by and between plaintiff's liability insurance carrier and defendants "without prejudice to the rights of the plaintiffs to proceed with the prosecution of their respective causes of action against the defendants to final adjudication."

The cases came on for trial on issues relating solely to plaintiffs' causes of action.

It was admitted that Ralph Strube is liable for damages caused by the actionable negligence, if any, of Jerry Strube.

The only evidence was that offered by plaintiffs. Pertinent portions thereof will be set forth in the opinion.

The issues submitted and the jury's answers are as follows: "1. Was the plaintiff, Laura Taylor Honeycutt, injured by the negligence of the defendants as alleged in the complaint? ANSWER: Yes. 2. If so, did the plaintiff by her own negligence contribute to her injuries as alleged in the answer? ANSWER: No. 3. What amount, if any, is the plaintiff, Laura Taylor Honeycutt, entitled to recover of the defendants on account of said injuries? ANSWER: $25,000.00. 4. What amount, if any, is the plaintiff, A. A. Honeycutt, entitled to recover of the defendants a. For property damage? ANSWER: $250.00. b. For medical expenses? ANSWER: $9,000.00."

A (consolidated) judgment for plaintiffs, in accord with the verdict, was entered. Defendants excepted and appealed.

*Craighill, Rendleman & Clarkson; Hartsell, Hartsell & Mills and John R. Ingle for plaintiff appellees.*

*Williams, Willeford & Boger for defendant appellants.*

BOBBITT, J.  The occupants of the Honeycutt car were Mrs. Honeycutt and a little boy (aged fifteen months) whom she was keeping. Since the collision, as a result of the brain injury she received, Mrs. Honeycutt has been and is now *unconscious,* unable in any respect to take care of herself. She is fed artificially. Artificial means are required for the functioning of her kidneys and bowels. Constant nursing has been and is required. In the opinion of the physician who has treated her from the day she was injured, "the prognosis is completely hopeless as far as ever recovering any consciousness or ever becoming aware of her surroundings. . . . she has complete, total disability as a result of the wounds which I saw that she had on the 6th day of September, 1960."

The foregoing explains (1) why Mrs. Honeycutt was not and could not be a witness and (2) why this action is being prosecuted in her behalf by a next friend. It is noted that defendants do not assign error in respect of the *amount of damages* awarded in either case.

Defendants assign as error (1) the denial of their motions for judgments of involuntary nonsuit, (2) the admission of certain testimony as to the speed of the Strube car, and (3) the failure of the court to apply the law to the facts in the instructions given the jury with reference to the contributory negligence issue.

No person who saw the collision testified. The evidence indicates there was no eye witness other than the occupants of the two cars.

There was evidence tending to show the following:

The Reverend Howard Taylor lives on the Roberta Mill Road approximately one mile south of the Meadow Branch bridge. On September 6, 1960, about 11:00 a.m., the Strube car, a 1956 dark blue Ford, headed toward Concord, approached and passed the Taylor home, attracting attention by the noise of its "loud mufflers."

Mrs. Nancy Easley lives on the Roberta Mill Road, "approximately middleways" between the home of the Reverend Howard Taylor and the Meadow Branch bridge. Mrs. Easley's testimony includes a statement that she lived "a little under a quarter of a mile from the Meadow Branch bridge." Approaching the bridge from the south, Mrs. Easley's home is on the left side of the road. Her attention was attracted by the roar of the motor of "a '55 or '56 model dark blue Ford" which, in her opinion, approached and passed her house at a speed of "(a) round eighty miles an hour." Mrs. Easley testified it passed her house "approximately between quarter to eleven and eleven o'clock" on the morning of September 6, 1960. No other car with a loud muffler passed her home that morning.

Mrs. Rachel Crisco lives on the Roberta Mill Road "at least 300 feet" south of Meadow Branch bridge, "on the left going towards Concord." A "few seconds" before the collision, a car, headed toward Concord, "whizzed by" Mrs. Crisco's home, attracting her attention by the loud and unusual "noise" and "racket" it was making. "Right after" the car passed, Mrs. Crisco heard "the crash." She testified: "It sounded like it was just tearing it all to pieces." Mrs. Crisco went to the road. From there she saw "the baby" standing "on the edge of the bridge." She did not go to the scene of the collision until after an ambulance had taken Mrs. Honeycutt to the hospital.

Mr. and Mrs. William Taylor saw and identified the Strube car while standing in the front yard of the Reverend Howard Taylor. They had stopped while on their way from Roberta to Concord and were getting into their car when the Strube car passed. Resuming their trip, they arrived at the scene of collision "about two minutes" after the Strube car had passed the Taylor home. Meanwhile, the collision had occurred. Upon arrival at the scene, one Jerry Cochrane "was picking up the baby about middle way of the bridge." Jerry Cochrane handed the baby to Mrs. Taylor.

In addition to the foregoing, evidence (set forth below) descriptive of the contour of the highway south of the Meadow Branch bridge and of the consequences of the impact bears upon whether the Strube car was being operated at excessive and unlawful speed.

It seems appropriate now to consider defendants' assignment of error based on their exception to the admission over their objection of the opinion evidence of Mrs. Easley as to the speed of the " '55 or '56 model dark blue Ford," with loud mufflers, that passed her home headed toward Concord about 11:00 a.m. on September 6, 1960.

Defendants contend the opinion testimony of Mrs. Easley was inadmissible on account of "remoteness, lack of observation, failure of identity, and lack of foundation."

"It is a general rule of law, adopted in this State, that any person of ordinary intelligence, who has had an opportunity for observation, is competent to testify as to the rate of speed of a moving object, such as an automobile." *Lookabill v. Regan,* 247 N.C. 199, 201, 100 S.E. 2d 521, and cases cited; *Hicks v. Love,* 201 N.C. 773, 161 S.E. 394.

There was plenary evidence that the dark blue Ford ('55 or '56), the subject of Mrs. Easley's testimony, was the Strube car. There was ample foundation for her opinion in that, her attention having been attracted by the roar of the motor, she observed the Strube car as it approached, as it passed and as it moved on toward the Crisco home and the Meadow Branch bridge. As to remoteness, we think the evidence affords a sufficient basis for a finding that there was no appreciable interval between the time the Strube car passed from Mrs. Easley's vision until the collision. The approach of the Strube car attracted the attention of Mrs. Crisco in the same manner it had attracted Mrs. Easley's attention and "(r)ight after" it passed Mrs. Crisco's home the crash was heard. Too, when the Taylors arrived at the scene of collision, "about two minutes" after they saw the Strube car pass the home of the Reverend Howard Taylor, sufficient time had elapsed for Jerry Cochrane to get to the bridge and pick up the baby.

In our view, the opinion testimony of Mrs. Easley was not inadmissible on account of remoteness or otherwise. Defendants' contentions bear on the weight rather than the competency of this testimony. Decisions supporting the view that Mrs. Easley's opinion testimony was not inadmissible on the ground of remoteness include the following: *S. v. Leonard,* 195 N.C. 242, 251, 141 S.E. 736; *S. v. Peterson,* 212 N.C. 758, 194 S.E. 498; *Wilson v. Camp,* 249 N.C. 754, 107 S.E. 2d 743; *Adkins v. Dills,* 260 N.C. 206, 132 S.E. 2d 324. The only case cited by defendants is *Corum v. Comer,* 256 N.C. 252, 123 S.E. 2d 473. Suffice to say, the law as stated therein is in accord with present decision but the facts are quite different.

All testimony concerning the Honeycutt car relates to physical facts observed *after* the collision. Plaintiffs' allegations that the Honeycutt car was brought "to a stop, or substantially to a stop," prior to

collision, was denied by defendants. There is no evidence, unless inferences from physical facts, bearing upon whether the Honeycutt car was stopped or in motion when the collision occurred.

There was testimony tending to show the following:

In approaching Meadow Branch bridge from Concord, there is "a slight curve" and then "for several hundred feet" the road is straight.

In approaching the bridge from Roberta, there is "a pretty sharp curve" to the right. Before you get to this curve, a sign gives warning that you are approaching a one-way bridge. From the apex of this curve to the bridge, the road is straight for 250 feet. You can see the bridge "approximately 250 to 300 feet before you get to it." Generally, from Roberta to the bridge "the road is up and down right smart, right smart unlevel."

The road was dry. The weather was clear. The maximum speed limit was 55 miles per hour. The width of the paved portion of the road was sixteen feet and ten inches. The width of the bridge was seventeen feet. The center of the road was not marked "right at the bridge." The pavement "had been put down in two sections" and you could "pretty generally tell from looking at the pavement where the center was"— "the breaking point was about the center of the road." There was no evidence as to the length of the bridge.

With reference to conditions existing at the scene after the collision, there was evidence tending to show the following:

Both cars were north (on the Concord side) of the bridge. The patrolman testified "(t)he skid marks and debris were approximately 15 feet from the end of the bridge." The Honeycutt car was on the right side of the road going toward Roberta. The front wheels were near or "just off" the edge of the pavement. The rear of the Honeycutt car "was near the center of the road." According to one witness, the Honeycutt car "was facing the woods." Another testified the Honeycutt car was "pointed towards the banister of the bridge." One witness testified the Honeycutt car was "about two foot from the corner of the bridge."

The right door of the Honeycutt (two-door) car was open. The left door was closed. The baby was on the bridge. Mrs. Honeycutt was on the left side of the road going toward Roberta. She was "laying across a barbed wire fence" with her head "against that post in the grass," near the northeast corner of the bridge, approximately 21 feet from the Honeycutt car. The motor from the Honeycutt car, which weighed 200-300 pounds, and the battery ("busted all to pieces") were to the right of the road going toward Roberta, down the bank and near the branch, some 25-45 feet from the Honeycutt car.

The Strube car was headed at an angle into a ditch and bank "off to the right hand side of the road" going toward Concord. The rear of it was toward the road. It was 160 feet or more north of the Honeycutt car. A witness testified he went to the Strube car and that Jerry Strube, the only person he saw there, told him "he couldn't lift his leg."

The Honeycutt car blocked the right side of the road going toward Roberta. The greater part of the debris was on that side of the road. The right side going toward Concord was not blocked. Traffic could move on the paved portion thereof.

The front portions of both cars were damaged. The more extensive damage was to the right front of the Honeycutt car and to the left front of the Strube car. Apparently, the Strube car struck the Honeycutt car with such force as to cause it to spin around and make nearly a complete circle. There was much evidence concerning the circular shape of certain lateral tire or skid marks. There was evidence a portion of such marks extended a short distance to the left of the center of the road going toward Roberta. As described by the investigating patrolman, "the circular skid marks" were "in a counter-clockwise motion as you are looking towards the bridge from the Concord side. . . . As to the center of the highway, the skid marks ranged from the right side of the road over . . . just a little bit across the center . . . of the road and back."

Further statement of the evidence is unnecessary. It is noted that neither Jerry Strube nor Jerry Cochrane testified. The evidence does not disclose how and when Jerry Cochrane arrived at the scene of collision.

When considered in the light most favorable to plaintiffs, the evidence was sufficient to support findings that Jerry Strube, when approaching Meadow Branch bridge, was operating the Strube car at excessive and unlawful speed; that notwithstanding he saw or by the exercise of due care should have seen the Honeycutt car in motion or standing still on the north side of the bridge he did not bring the Strube car under control but continued across the bridge at such speed until the moment of collision; and that such negligence of Jerry Strube was a proximate cause of the collision and resulting injuries and damage. Hence, defendants' motions for judgment of nonsuit were properly denied.

Even so, defendants contend a new trial should be awarded for error in the charge in respect of the contributory negligence issue.

The burden was on defendants to prove their allegations in respect of contributory negligence. No person testified who observed (or should have observed) the Honeycutt car prior to the collision. There

is no evidence as to Mrs. Honeycutt's alleged failure to keep a proper lookout or her alleged failure to keep her car under proper control. The question is whether there is evidence that she operated her car on her left half of the highway in violation of G.S. 20-146 (b) and G.S. 20-148 and whether such negligence was a proximate cause of the collision.

There is no evidence as to the positions of the cars as they *approached* the scene of collision. Was the Strube car in the act of turning from its left to its right side of the highway when the collision occurred? There is no evidence this occurred. On the other hand, the evidence is not inconsistent with such occurrence.

Plaintiffs attempt to draw conclusions from physical facts observable after the collision as to the positions of the cars *at the moment of collision.* While there is evidence as to physical facts consistent with theories favorable to plaintiffs and other theories favorable to defendants as to the positions of the cars *at the moment of collision,* where the cars were *as they approached* the scene of collision and *when the collision occurred* remains the subject of theory, conjecture and surmise.

Under well settled legal principles stated in *Boyd v. Harper,* 250 N.C. 334, 339, 108 S.E. 2d 598, and in cases cited therein, the evidence was insufficient to justify the submission of the contributory negligence issue. In this connection, see *Parker v. Flythe,* 256 N.C. 548, 124 S.E. 2d 530. Hence, error, if any, in respect of the court's instructions bearing upon the contributory negligence issue is harmless. *Bruce v. Flying Service,* 234 N.C. 79, 66 S.E. 2d 312.

No error.