Oliver v. Powell

---

TERRY OLIVER, Administrator of the Estate of WILLIAM ALFRED OLIVER, SR. v. ROBERT HENRY POWELL

No. 7918SC1084

(Filed 3 June 1980)

1. **Automobiles § 46– striking of pedestrian – opinion testimony as to speed – exclusion error**

    In an action to recover for the wrongful death of a pedestrian who was struck by defendant's automobile, the trial court erred in excluding testimony by an eyewitness to the accident concerning the speed of defendant's vehicle, but the court did not err in excluding testimony by the witness that he saw what looked like beer cans in the backseat of defendant's car, since this testimony was the only evidence that defendant was intoxicated at the time of the accident, was irrelevant and too remote, and did not raise even a conjecture that defendant was under the influence of alcohol at the time of the collision.

Oliver v. Powell

2. **Automobiles § 62.2– pedestrian crossing highway – sufficiency of evidence of driver's negligence**

In an action to recover for the wrongful death of a pedestrian who was struck by defendant's vehicle, evidence was sufficient to be submitted to the jury and did not show that the pedestrian was contributorily negligent as a matter of law where the evidence tended to show that deceased was crossing a four lane highway at a point where he would be visible to defendant for 1500 feet at night; defendant, exceeding the maximum speed of 45 mph by 15 mph, bore down on deceased who was able to reach the median before defendant was upon him; deceased, standing on the median, was looking for traffic in the lanes opposite the lane defendant was traveling in and opposite those lanes he had just crossed; and defendant meanwhile applied his brakes on seeing the pedestrian, swerved upon the median and there struck deceased in the back as he stood on the median of the divided four lane highway.

APPEAL by plaintiff from *Davis, Judge.* Judgment entered 13 June 1979 in Superior Court, GUILFORD County. Heard in the Court of Appeals 13 May 1980.

Plaintiff, the administrator of the estate of William Alfred Oliver, Sr., who died on 14 March 1977 as a result of injuries received from being struck by defendant's automobile, brought this action against defendant for the wrongful death of William Alfred Oliver, Sr. Plaintiff alleged negligence which defendant denied in his answer. Defendant also alleged contributory negligence as an affirmative defense. Last clear chance was not pled as an issue in the case.

The following was stipulated as fact by the parties. At approximately 10:45 p.m. on 14 March 1977, an accident occurred on Wendover Avenue near its intersection with Maple Street in Greensboro, North Carolina. A 1966 Volkswagen owned and operated by defendant struck plaintiff's intestate. Prior to the accident, plaintiff's intestate was crossing Wendover Avenue on foot from north to south. The Volkswagen was traveling west on Wendover Avenue in the far left lane next to the median. The maximum posted speed on Wendover at the point of the accident is forty-five miles per hour. There are no municipal streetlights in the area of the accident. At the point where plaintiff's intestate was crossing Wendover, he was not within a marked crosswalk or unmarked crosswalk at an in-

Oliver v. Powell

tersection. Plaintiff's intestate died as a result of injuries suffered in the accident.

Plaintiff's evidence consisted of the testimony of Roland Smith (by deposition), three investigating police officers and plaintiff. Their testimony, in pertinent part, can be summarized as follows.

Through deposition, Roland Smith testified he remembered an accident on Wendover Avenue sometime in 1977 though he did not remember the date. He specifically recalled that it was drizzling rain that night, a condition he particularly does not like to drive in. He was on his way to pick up his wife after she got off work at 11:00 p.m. This put him on Wendover Avenue between 10:30 and 10:40 p.m. He was traveling approximately fifty miles per hour to the right of a light-colored Volkswagen which was in the left lane next to the median. They both ran through a yellow light and proceeded on to the Summit Avenue underpass. The Volkswagen was two car lengths in front of him as both cars went under the Summit Avenue underpass. From the Summit Avenue underpass to the Maple Street intersection, Wendover is straight. The area is dimly lit. He saw the Volkswagen car lights shine on the figure of a person three car lengths ahead who was crossing the street from the direction of the Cone Mill plant at the Maple Street intersection with Wendover. The pedestrian was "just about to the median and had jumped up on the median and was watching traffic coming the other way." "When his light hit the pedestrian, I saw the man step up" on the median. The Volkswagen brake lights came on when the pedestrian came into view. Smith hit his brakes, pulled to the right and went past the Maple Street entrance onto Wendover. "I remember applying my brakes and moving over into the next lane and then seeing a car go up on a median and hit the pedestrian." He later testified he did not see the pedestrian being hit but only heard the thud when he was hit. Five or six seconds passed from the time the pedestrian came into view until Smith heard the thud. He pulled to the side of the road past Maple Street. He crossed the road to the accident site and observed the pedestrian lying in the lane closest to the median opposite to the direction in which the

Volkswagen and his car were traveling. Four or five people were present, so he got back in his car and went to pick up his wife. After picking up his wife, they came back by the accident but did not stop. An ambulance and police car were there. He did not notice whether the pedestrian's clothes were light or dark. Testimony by Smith to the effect that the Volkswagen was "doing about fifty-five or close to sixty" in the forty-five mile per hour zone and that he saw what looked like two beer cans in the backseat was excluded by the trial judge over objection by plaintiff. When shown the description and diagram of the 14 March 1977 accident contained in the police report, Smith testified it did not correspond to what he remembered seeing in that "when I saw the pedestrian, he was up on the median." Smith was discovered as a witness by mere coincidence. The wife of plaintiff's intestate happened to be at the police department trying to find out why no one had been charged in the death of her husband on a day when Smith came in to get a copy of a police report of an accident involving his daughter. He described the accident he had seen on Wendover and gave the wife of plaintiff's intestate his phone number.

Thomas H. Eanes testified that he arrived at the scene on the night in question sometime after 11:00 and began taking photographs. He was at that time an Identification Specialist for the city police department. On arriving, he observed "a 1966 Volkswagen automobile sitting crossways with the front wheels up on the center median." There were skid marks leading up to the wheels of the Volkswagen which was damaged in the front and on the windshield. There was what appeared to be blood on the street which was otherwise dry. He described Wendover Avenue at that point as a four lane highway, two lanes going east and two going west with an additional left turn lane for eastbound traffic. After photographing the scene of the accident, he went to the hospital to photograph the deceased pedestrian. Eanes could not remember exactly what clothing the deceased was wearing. He observed injuries to the back of the deceased's head, his left arm, right shoulder and back. He did not remember any injuries to the front of deceased's body.

Police Officer D.A. Denny testified that he arrived on the scene about 10:53 p.m. and was the second officer on the scene.

Oliver v. Powell

It was a dry night. He could find no eyewitnesses to the accident. He began making measurements of the area. He found a white Volkswagen in the inside westbound lane of Wendover with its front end up on a concrete median where Wendover and Maple Street meet in a T intersection. The front hood was dented, the windshield shattered and the right front bumper was clean of road grime. He measured four different skid marks. The first skid mark measured twenty-nine feet, ten inches and was located next to the median just before the intersection of Wendover and Maple. There was then a break of eight to ten feet followed by three more skid marks which began in the middle of the intersection. One skid mark went for fifty-seven feet, five inches and went up to the right rear tire of the Volkswagen. Another skid mark to the far left of this one went for twenty-eight feet, one inch to the concrete median. The tire leaving this skid mark went onto the concrete median where the median began at the west margin of the intersection. Between these two was another skid mark measuring more than twenty feet, which stopped at about the west side of where the median began. The total distance of skid marks to the right rear tire of the Volkswagen was eighty feet, six inches. The Volkswagen tires did not appear slick to the point they were unsafe or unlawful. Denny described that vicinity of Wendover as a very dark roadway at night. According to his testimony, Wendover, as you come under the Summit Avenue bridge headed west toward the Maple Street intersection, develops a third lane for westbound traffic. In the other direction going towards the summit Avenue bridge, there are two lanes for eastbound traffic, a left turn lane for vehicles turning onto Maple and a lane to the south for those vehicles exiting onto Summit.

Police Officer Q.J. Parlier testified that he assisted in the investigation of the accident in question. He found all the tires on the Volkswagen except the left front tire had the required amount of tread. It had not been raining at all the night of the accident. The unobstructed view for traffic going west, as was defendant, to the point of the accident was approximately 1500 feet that night. He testified that plaintiff's intestate was wearing dark work clothes.

Plaintiff testified that he is the twenty-nine-year-old son of

the pedestrian hit and killed by defendant's car. His father worked at the Cone Mill plant located right off Wendover on Maple Street. His father walked to and from work from his home which was only four or five blocks away. On learning of the accident, he went to the scene of the accident where Officer Parlier told him what happened. The area had enough light from several sources that he could see a puddle of blood in the street and blood spattered over the median.

At the close of plaintiff's evidence, defendant moved for directed verdict on the grounds (1) that the plaintiff had failed to introduce any evidence of negligence on the part of defendant as a proximate cause of the collision and death of defendant and (2) that plaintiff's own evidence established contributory negligence on the part of plaintiff's intestate as a matter of law. The trial court granted the motion for directed verdict and plaintiff appeals.

*Graham, Cooke, Miles and Daisy, by James W. Miles, Jr., for plaintiff appellant.*

*Smith, Moore, Smith, Schell and Hunter, by Robert A. Wicker, for defendant appellee.*

VAUGHN, Judge.

The principal question raised on this appeal is whether the trial court erred in granting defendant's motion for directed verdict. Before we reach this issue, we must address the issue of whether the trial court properly excluded certain evidence offered by plaintiff through the deposition of Roland Smith.

Defendant, at the outset, contends Roland Smith was not testifying about the same accident. Smith remembered an accident in 1977 on Wendover Avenue where it intersects with Maple Street involving a light-colored Volkswagen and a pedestrian. Smith did not remember the exact date and he recalled that it was drizzling rain that night and that the pavement was glistening because of the rain. All the investigating police officers testified it was not raining at all that night and that the

Oliver v. Powell

pavement was dry. The police report diagram did not correspond with his recollection of the accident. Except for these details, the testimony of the accident Smith observed is substantially the same as the testimony of the investigating officers about the accident scene they observed. The testimony of the officers and Smith was identical in respect to the time of the accident, the make of car, its light color, the exact location of the accident and the positions at which the pedestrian and the car which hit him came to rest after the collision. The evidence presents a sufficient foundation that Smith was testifying about the accident involving defendant and plaintiff's intestate. The jury could, of course, find otherwise and choose to ignore the testimony. He was, however, a competent witness to testify about the accident. *See Honeycutt v. Strube,* 261 N.C. 59, 134 S.E. 2d 110 (1964).

[1] The question thus becomes whether it was proper for the trial court to exclude certain evidence offered by this witness. This evidence is crucial for it presents some evidence of negligence on the part of defendant pled by plaintiff.

The trial court excluded testimony by Smith that defendant was "doing about fifty-five or close to sixty because I was doing fifty and it was in front of me." The posted maximum speed on Wendover at that point was forty-five. Any person of ordinary intelligence, who has an opportunity to observe a vehicle, is competent to testify as to the rate of speed of such vehicle and can express an opinion as to its speed. *Honeycutt v. Strube, supra; Lookabill v. Regan,* 247 N.C. 199, 100 S.E. 2d 521 (1957). Smith had a reasonable opportunity to observe the Volkswagen which traveled beside his car and then pulled ahead of his car. It was error for the trial court not to admit this testimony of the speed of the Volkswagen. Other testimony concerning skid marks and the time between which Smith saw the Volkswagen brake lights come on and he heard the thud or actually saw the car hit the pedestrian does not make the opinion on speed of the car inherently incredible or contradictory to the physical evidence. What Smith, who had problems measuring distance, described as three car lengths, one of the investigating officers described as a distance of 1500 feet. The skid marks do not give a

Oliver v. Powell

conclusive indication of speed and stopping time because of the collision with the median. *Contrast Jones v. Schaffer*, 252 N.C. 368, 114 S.E. 2d 105 (1960); *Hall v. Kimber*, 6 N.C. App. 669, 171 S.E. 2d 99 (1969).

The trial court also excluded testimony that Smith saw what looked like beer cans in the backseat of defendant's car. Plaintiff contends this was relevant evidence that defendant was intoxicated at the time of the collision. This is the only evidence of such and the trial court properly excluded it as irrelevant and too remote. *Merchants Distributors v. Hutchinson*, 16 N.C. App. 655, 193 S.E. 2d 436 (1972). The proffered evidence did not raise even a conjecture that defendant was under the influence of alcohol at the time of the collision.

[2] The central question of this case is whether the directed verdict was proper because plaintiff did not present sufficient proof of defendant's negligence or because the evidence demonstrates that plaintiff's intestate was contributorily negligent as a matter of law. We hold it was error to grant the directed verdict for defendant for the evidence in a light most favorable to plaintiff presents questions of fact on both the issue of negligence and contributory negligence which entitled plaintiff to have the case presented to a jury.

Duties are imposed on both a motorist and a pedestrian to be reasonably prudent persons in the use of the highways of the State. These duties are codified in part in G.S. 20-174, which provides in part the following.

(a) Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway. . . .

(e) Notwithstanding the provisions of this section, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway, and shall give warning by sounding the horn when necessary. . . .

Oliver v. Powell

As stated in *Blake v. Mallard*, 262 N.C. 62, 65, 136 S.E. 2d 214, 216 (1964) (citations omitted),

> [t]he failure of a pedestrian crossing a roadway at a point other than a crosswalk to yield the right of way to a motor vehicle is not contributory negligence *per se;* it is only evidence of negligence. However, the court will non-suit a plaintiff-pedestrian on the ground of contributory negligence when all the evidence so clearly establishes his failure to yield the right of way as one of the proximate causes of his injuries that no other reasonable conclusion is possible.

Our courts have considered many cases involving pedestrians being hit by automobiles. The case at hand, when considered in a light most favorable to plaintiff, presents the following situation.

Plaintiff's intestate was crossing Wendover Avenue near its intersection with Maple Street at a point where he would be visible to defendant for 1500 feet at night. Defendant, exceeding the maximum speed of forty-five miles per hour by fifteen miles per hour, bore down on plaintiff's intestate who was able to reach the median before defendant was upon him. Plaintiff's intestate, standing on the median, was looking for traffic in the lanes opposite the lane defendant was traveling in and opposite those lanes he had just crossed. Defendant, meanwhile, applied his brakes on seeing plaintiff's intestate, swerved upon the median and there struck plaintiff in the back as he stood on the median of the divided four lane highway. An inference from this evidence is that plaintiff's intestate had yielded the right-of-way but was struck when defendant lost control of his car.

We hold the evidence in a light most favorable to plaintiff presents clear evidence of negligence on the part of defendant in the control of his car. It does not demonstrate that plaintiff's intestate was contributorily negligent as a matter of law. This holding is consistent with the holdings of the courts of this State in similar factual situations. *Ragland v. Moore*, 299 N.C. 360, 261 S.E. 2d 666 (1980); *Landini v. Steelman*, 243 N.C. 146, 90

S.E. 2d 377 (1955); *Goodson v. Williams,* 237 N.C. 291, 74 S.E. 2d 762 (1953); *Williams v. Henderson,* 230 N.C. 707, 55 S.E. 2d 462 (1949); *Morris v. Minix,* 4 N.C. App. 634, 167 S.E. 2d 494 (1969); *contrast Anderson v. Carter,* 272 N.C. 426, 158 S.E. 2d 607 (1968); *Blake v. Mallard, supra; Gentry v. Hackenburg,* 23 N.C. App. 96, 208 S.E. 2d 279 (1974).

The case of *Gentry v. Hackenburg, supra,* involved a situation where a directed verdict was affirmed where the plaintiff was struck while attempting to cross a roadway. Gentry was crossing at a point where the view was unobstructed for three quarters of a mile. She saw Hackenburg's car coming but crossed the road in front of it. She was not struck until she reached the shoulder of the road and she was struck by Hackenburg's left rear fender. He applied his brakes, drove entirely off the road to avoid hitting plaintiff and the court held Gentry's disregard of the approach of the oncoming car in her attempt to cross the road to be contributory negligence as a matter of law. The case is factually similar only to the extent that both pedestrians were struck somewhere off the main traveled portion of the road. The evidence is uncontradicted that the pedestrian in the *Hackenburg* case did not yield the right-of-way as required by G.S. 20-174(a). The testimony of the plaintiff and the testimony of the driver who hit her made this clear. In the present case, the evidence of such is contradicted and presented a jury question.

Reversed and remanded.

Judges PARKER and HEDRICK concur.