LOUISE M. LANDINI v. WILLIAM H. STEELMAN.

(Filed 23 November, 1955.)

**1. Automobiles § 33—**

A pedestrian crossing within the block where there is no marked crosswalk and between intersections where no traffic control signals are maintained, is under duty to yield right-of-way to vehicular traffic, but his failure to do so is not contributory negligence *per se*, and does not relieve the driver of a motor vehicle of the duty, both at common law and under the statute, to exercise due care to avoid hitting him. G.S. 20-174 (a), G.S. 20-174 (e).

**2. Automobiles §§ 411, 42k—Issues of negligence and contributory negligence held for jury in this action to recover for injuries to pedestrian struck while crossing street.**

Plaintiff's evidence tended to show that she was crossing a street within a block at nighttime, that no traffic control signals were maintained at the adjacent intersections, that the view to the south was free of traffic and unobstructed for 250 yards to a hill crest, and that plaintiff looked both ways and saw no vehicle approaching before attempting to cross the street, 64 feet wide, and was struck by defendant's car approaching from the south when plaintiff was 23 feet west of the east curb of the street. There was also evidence that defendant was traveling at a speed in excess of the statutory maximum permitted within a residential district. *Held:* The evidence is sufficient to be submitted to the jury on the issue of defendant's negligence and does not establish contributory negligence as a matter of law on the part of plaintiff.

BARNHILL, C. J., dissents.

APPEAL by plaintiff from *Crissman, J.,* at 18 April, 1955, Term of FORSYTH.

*Craige & Craige and Roger B. Hendrix for plaintiff, appellant.*
*Ratcliff, Vaughn, Hudson, Ferrell & Carter for defendant, appellee.*

JOHNSON, J. This is a civil action in tort to recover damages for personal injuries sustained by the plaintiff, who while crossing a street in the City of Winston-Salem on foot was hit by an automobile driven by the defendant. The trial court allowed the defendant's motion for judgment as of nonsuit at the close of the plaintiff's evidence. The appeal challenges the correctness of this ruling and brings into focus these facts disclosed by the evidence:

The plaintiff is a resident of Concord, Massachusetts. On 7 December, 1951, she was a visitor in the City of Winston-Salem on the occasion of the Piedmont Bowl football game. Her son was a member of the championship high school team from Concord which was playing a local team.

Shortly before being injured, the plaintiff had boarded a Greyhound bus at a local hotel, along with 35 to 40 other visitors from Concord, to be taken to the U. S. Armory for a barbecue given in their honor before the game. The Armory is located on the east side of Stadium Drive, which runs north and south. At about 5:50 o'clock p.m., the bus stopped on the west side of Stadium Drive, across the street from the Armory. It was cloudy and dark and the street was wet, but it was not raining. The passengers alighted and started crossing the street to enter the Armory. The plaintiff and her friend, Mrs. Lips, were the last to leave the bus. After alighting they walked around in front of the parked bus, looked first to the north and then to the south, saw no oncoming traffic in either direction, and then started walking across the street toward the Armory, at a slightly diagonal angle to the north. The street at that point is 64 feet 7 inches wide. When about two-thirds of the way across, the two ladies observed the lights of the defendant's car approaching from the south. Both attempted to get out of its way by increasing their pace toward the Armory-side of the street, but both were struck before they could reach safety. The plaintiff was struck on her right back side, and sustained substantial injuries. The point of impact was 23 feet west of the east curb of Stadium Drive in front of the driveway leading to the Armory. The defendant's car came to rest about 15 feet from the east curb. Skidmarks extended back from its front wheels about 45 feet. Street lights were scattered at intervals along Stadium Drive. One was approximately 25 feet north of the curb near the driveway to the Armory. It was on the west side of the street. Other street lights were in the center of the street in either direction from the point of impact, some distance north and south.

Mrs. Elizabeth Lips testified in part: "We went around the front end of the bus and looked both ways. The visitors from Concord had just crossed the street, and some of them had not even gotten upon the sidewalk there. . . . I would say we were going at a good pace across the street because we were all together, . . . We weren't running. We were walking fast, . . . and all of a sudden I didn't know whether it was lights that slapped on, I could see a glare, and I grabbed Mrs. Landini's hand and I said, 'Come on!' But before we made it, he was immediately on us and we got hit. I don't think we took more than two steps between the time I noticed the glare of the lights and grabbed her arm, and the automobile struck Mrs. Landini. . . . He was immediately on

us. He was coming fast, and that is all. . . . I don't think there was any lights on the bus. No horn was blown whatsoever before the impact." Cross Examination: "When we were crossing it appeared to me he just put his lights on. . . . he must have just come over the top of the hill so fast he came on us before we could get over. . . . He wasn't there when we looked to cross the street, Sir he wasn't there, . . . but he was there mighty quick afterwards."

Looking south from where the bus stopped, the street is straight but slightly upgrade for a distance of 250 or 300 yards to a hill crest which rises and cuts off vision of traffic beyond. The plaintiff was crossing the street at a point which was neither at an intersection nor within a marked cross-walk. She was crossing within the block, and there were no traffic control signals at the adjacent intersections. It was in a residential district where the maximum speed limit was 35 miles per hour. No other traffic was nearby or approaching at the time.

Jean Caldwell testified in part: "When I had completed crossing Stadium Drive, I heard brakes screeching. As I turned around I saw a car coming in a northerly direction between 65 and 70 miles per hour. The automobile struck Mrs. Landini and just grazed Mrs. Lips . . . The front of the car struck Mrs. Landini, throwing her into the air and she landed on the pavement about 10 feet from the point of impact.

Two other witnesses gave opinions as to the speed of the defendant's car. One's estimate was 70, the other's 45 miles per hour.

It is apparent that the motion for nonsuit was allowed below either on the ground that the plaintiff's evidence (1) was insufficient to show negligence of the defendant as the proximate cause of the injury, or (2) that it disclosed contributory negligence of the plaintiff as a matter of law. In either event we think the ruling erroneous. Here the evidence must be tested in the light of the correlative duties imposed upon both the plaintiff and the defendant by these portions of G.S. 20-174: "(2) Every pedestrian crossing a roadway at any point other than within a marked cross-walk or within an unmarked cross-walk at an intersection shall yield the right-of-way to all vehicles upon the roadway. . . . (e) Notwithstanding the provisions of this section, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway, . . ."

If it be conceded that the plaintiff failed to yield the right-of-way as required by G.S. 20-174 (a), even so, it was the duty of the defendant, both at common law and under the express provisions of G.S. 20-174 (e), to "exercise due care to avoid colliding with" the plaintiff. Our decisions hold that a failure so to yield the right-of-way is not contributory negligence *per se*, but rather that it is evidence of negligence to be considered with other evidence in the case in determining whether the

actor is chargeable with negligence which proximately caused or contributed to his injury. *Bank v. Phillips,* 236 N.C. 470, 73 S.E. 2d 323, and cases cited. See also *Goodson v. Williams,* 237 N.C. 291, 74 S.E. 2d 762; *Simpson v. Curry,* 237 N.C. 260, 74 S.E. 2d 649.

We conclude that the evidence adduced below is sufficient to justify a jury-finding of actionable negligence against the defendant, free of contributory negligence on the part of the plaintiff. It is true also that the evidence in some of its aspects is sufficient to justify the inference (1) that the defendant's negligence, if such be found, was not the proximate cause of the injury or (2) that the plaintiff was contributorily negligent. The evidence being susceptible of these diverse inferences, the case was one for the jury.

The cases cited and relied on by the defendant are factually distinguishable. In *Garmon v. Thomas,* 241 N.C. 412, 85 S.E. 2d 589, the collision occurred in broad daylight, outside of a residential or business district, and there was no evidence of excessive speed on the part of the defendant. Also, there was other traffic on the highway immediately in front of the defendant's truck. In *Tysinger v. Dairy Products,* 225 N.C. 717, 36 S.E. 2d 246, the collision occurred in the daytime. There a pedestrian, facing an oncoming truck with unobstructed view of at least 300 yards, stepped off the side of the road and "walked right into the side of the truck." Clearly he was contributorily negligent.

The judgment as of nonsuit entered below is
Reversed.

BARNHILL, C. J., dissents.