RICHARD O. GAMBLE, ADMINISTRATOR OF THE ESTATE OF CHARLES F. ROGERS, DECEASED v. DORIS SEARS AND RAEFORD L. SEARS.

(Filed 10 June, 1960.)

**1. Trial § 22a—**
   On motion to nonsuit, the evidence is to be taken in the light most favorable to plaintiff.

**2. Automobiles § 33—**
   It is not unlawful for a pedestrian to cross a public highway, but in crossing a highway at a point other than a marked crosswalk or an unmarked crosswalk at an intersection, a pedestrian is required to yield the right of way to vehicular traffic, although the failure to do so is not negligence *per se*, but only evidence of negligence to be considered by the jury with other facts and circumstances. G.S. 20-174(a).

**3. Same—**
   A motorist, even in those instances in which he has the right of way over a pedestrian, is under the common law duty to exercise due care to avoid colliding with the pedestrian and is under statutory duty to give warning by sounding his horn when necessary and the duty to exercise proper precaution upon observing any child or confused person upon the highway. G.S. 20-174(e).

**4. Trial § 22c—**
   While discrepancies and contradictions in the evidence are for the jury and not the court to resolve, where the evidence is insufficient to make out a cause of action in plaintiff's favor under any version of the evidence, nonsuit is proper.

**5. Automobiles § 33—**

Where a motorist having the right of way observes a pedestrian, apparently in possession of his faculties, standing in a place of safety, the motorist has the right to assume and act upon the assumption that the pedestrian will recognize her right of way in the absence of anything which should give notice to the contrary.

**6. Automobiles §§ 411, 42k—** Evidence held insufficient to show negligence on part of motorist colliding with pedestrian and to show contributory negligence on the part of the pedestrian.

The evidence tended to show that defendant was traveling east upon a two lane highway both lanes of which were for east bound traffic, that the east lanes diverged into two highways of two lanes each and had, from the point of divergence, a triangular paved portion some seven or eight feet wide at the base, not intended for vehicular traffic. The evidence considered in the light most favorable to plaintiff tended to show that, as defendant approached the point where the highways diverged, intending to take the highway to her left, she saw plaintiff's intestate, a man some seventy-seven years old, cross the right highway at a kind of trot, that he stopped on the triangular paved portion between the highways at a point where it was some six feet wide, that defendant slowed her vehicle and blew her horn, that intestate seemed to look around and then began a quickened walk across her lane of traffic, that immediately she apprehended the pedestrian was going to leave his place of safety defendant applied her brakes and swerved to the left lane of the highway, that the front of her car passed intestate, but that he continued forward and collided with the right side of her car, that she stopped her car in about 25 feet after the impact, and that intestate gave the appearance of a man capable of looking after himself. *Held:* The evidence discloses that defendant did all she could to avoid striking the pedestrian after she was put on notice that he was going to leave a place of safety and walk into the highway in the path of her vehicle, and further shows contributory negligence as a matter of law on the part of the pedestrian.

PARKER, J., dissents.

APPEAL by plaintiff from *Hobgood, J.,* February Regular Civil Term, 1960, of WAKE.

Civil action instituted May 8, 1959, in which plaintiff alleged, but did not separately state, two causes of action: (1) a cause of action for personal injuries suffered by Charles F. Rogers, the intestate, from his injury until his death, and (2) a cause of action for the wrongful death of the intestate. (See *Hinson v. Dawson,* 241 N.C. 714, 86 S.E. 2d 585.)

It was stipulated that Rogers, a pedestrian, died as the result of injuries received from a collision with a 1953 Oldsmobile owned by defendant Raeford L. Sears and operated by defendant Doris Sears.

Issues of negligence, contributory negligence, last clear chance and damages are raised by the pleadings.

At the conclusion of plaintiff's evidence, the motion of Raeford L. Sears for judgment of nonsuit was allowed. Plaintiff did not except to this ruling. Hereafter, "defendant" refers to (Mrs.) Doris Sears.

The accident occurred about 7:45 a.m. on Tuesday, September 30, 1958, on U.S. Highway #1, approximately three miles west of the city limits of Raleigh. Defendant, accompanied by Mrs. Janet Harding Carpenter, was driving east toward Raleigh.

In approaching the scene of accident, defendant had traveled on a 24 foot, two-lane highway, a section of two U.S. highways, to wit, #1 and #64. A short distance east of the Jones-Franklin Road, an intersecting highway, #1 and #64 separate in this manner: (1) #64, a 24 foot, two-lane highway, extends straight toward Western Boulevard, and (2) #1, a 24 foot, two-lane highway, diverges from #64, curves gradually to the left and extends toward Hillsboro Street. All lanes of these highways are exclusively for eastbound traffic.

Beginning 75 feet east of the *point* where #1 and #64 diverge, a "grassy plot" separates the two highways. Between said point of divergence and the grassy plot there is a paved triangular area outside the traffic lanes of #1 and of #64. The composition of the paving in this triangular area is somewhat different from that of #1 and of #64. However, this triangular area is not separated from #1 or from #64 by any barrier, elevation or sign.

The base of the triangle, where this triangular area abuts the grassy plot, is 7 or 8 feet in width. Extending west from this base, the triangular area gradually narrows until it reaches said point where the two highways diverge. To illustrate, 69 feet west of the grassy plot the width of the triangular area is only 7¼ inches.

When the accident occurred defendant was on #1, having passed the point where the highways diverge. After the accident, Rogers was lying in the north lane of #1 (the left of the two lanes for eastbound traffic and farthest from said triangular area), with his head 18 inches north of the line dividing the two lanes of #1 and his body extending north from that point.

Rogers had "a slightly swelled place with a break in the skin" on the left side of his head. No mark, indicating the point of contact, was found on defendant's car.

Rogers was 77 years of age. A witness for plaintiff testified: "He could get about right good for a man of his age."

Sheriff Pleasants and Deputy Sheriff Midgette, en route to Raleigh, happened to arrive at the scene some ten minutes after the accident.

Rogers was lying on the road, ". . . a crowd of folks around him". Several cars were parked nearby. Pleasants testified: "He (Rogers) was conscious and he talked, asking a question or two. He asked, 'What happened?'" There was no evidence as to any other statement made by Rogers.

After Rogers was taken from the scene by ambulance, defendant made certain statements to Pleasants and Midgette, which, together with other evidence, will be set forth in the opinion.

The record indicates defendant made no motion for judgment of nonsuit at the conclusion of plaintiff's evidence, but proceeded to offer her own testimony and the testimony of Mrs. Janet Harding Carpenter, a passenger in the Oldsmobile.

At the conclusion of all the evidence, defendant moved for judgment of nonsuit. (G.S. 1-183) Allowing this motion, the court entered judgment of nonsuit and dismissed the action. Plaintiff excepted and appealed.

*Charles F. Blanchard for plaintiff, appellant.*
*Smith, Leach, Anderson & Dorsett for defendant, appellee.*

BOBBITT, J. Only one question is presented: Was the evidence, when considered in the light most favorable to plaintiff, sufficient to require submission to the jury? *Murray v. Wyatt,* 245 N.C. 123, 128, 95 S.E. 2d 541.

It is not unlawful for a pedestrian to cross a public highway. If while so engaged, he is injured or killed from contact with a motor vehicle on such public highway, the statutory rule as to right of way is relevant.

Relevant to the alleged (contributory) negligence of Rogers, G.S. 20-174(a) provides: "Every pedestrian crossing a roadway at any point other than within a marked cross-walk or within an unmarked cross-walk at an intersection shall yield the right-of-way to all vehicles upon the roadway." However, a pedestrian's failure to yield the right of way is not (contributory) negligence *per se,* but only evidence thereof for consideration with other facts and circumstances. *Bank v. Phillips,* 236 N.C. 470, 73 S.E. 2d 323, and cases cited; *Simpson v. Curry,* 237 N.C. 260, 74 S.E. 2d 649; *Goodson v. Williams,* 237 N.C. 291, 74 S.E. 2d 762; *Moore v. Bezalla,* 241 N.C. 190, 84 S.E. 2d 817; *Landini v. Steelman,* 243 N.C. 146, 90 S.E. 2d 377, and cases cited.

Relevant to the alleged negligence of defendant, G.S. 20-174(e) provides: "Notwithstanding the provisions of this section, every driver

of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway, and shall give warning by sounding the horn when necessary, and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a roadway." Independent of statute it is the duty of the motorist at common law to "exercise due care to avoid colliding with" a pedestrian. *Landini v. Steelman, supra.*

With these well-settled principles in mind, a critical analysis of the evidence is necessary to decision.

Apart from testimony as to physical facts, the evidence consists of the testimony of Sheriff Pleasants and Deputy Sheriff Midgette (plaintiff's evidence) and of the testimony of defendant and Mrs. Carpenter (defendant's evidence).

It is noted that Pleasants and Midgette stated frankly they were not quoting defendant "verbatim" or "exactly" but were testifying to the substance of what defendant told them.

Pleasants, whose testimony was brief, testified: "Mrs. Sears said that she was driving north on Highway No. 1 and saw a man crossing from the right side of the road to the left side, from her right to the left . . . she said it was from the right side that he came going east toward Raleigh and she stated that Mr. Rogers ran into her car from the right side of the road going across to the left side."

Midgette, on direct examination, testified: "She (Mrs. Sears) said she was going east on No. 1 at about 45 M.P.H. and when she saw him she took her foot off the accelerator. She said she was *in the north lane, the left lane, the one farthest north* . . . she said she was some 200 or 300 feet away when she first saw the pedestrian. She said when she first saw him he was stepping into *the southern lane* going across the highway, going in a northern direction. She said he looked like he was kind of off balance, kind of running or trotting like he was trying to catch up himself, like he was going forward . . . she said . . . when she saw this man she took her foot off the accelerator and slowed down somewhat and *when he got to the center portion of the road where there is no lane,* that he gave her the impression that he slowed up and she hit the gas again and was going to go by him when she realized that he was going out there and she swerved to the left to miss him. She said she had slowed down to about 30 M.P.H. when she hit the gas again; that she didn't know about how fast she was going but not too much faster, that she had just hit the gas and that she swerved and heard something, some sound, hit the side of her car and that she didn't know just what it was." (Our italics)

Midgette, on cross-examination, testified as follows: "She stated . . . when she saw the man, that after she saw the man, he came *to the center of that road on that V-part.* She said that when he reached that part in the center he straightened up. I wouldn't say that she said he stopped, but I got the impression she meant that, but I don't know. . . . After he, the pedestrian, was in a position in the middle of that V-portion he was then outside of Mrs. Sears' lane of travel. After that time, she said he then started forward again towards her car after she had put her foot back on the gas to proceed. At that time, she attempted to swerve to her left, she said. She said the pedestrian's body brushed against her car, but she didn't know where, but somewhere against the side of the car. . . . Mrs. Sears said that there was a car proceeding ahead of her to her right on Highway No. 64 in the southern lane, the furtherest lane. She told me that there was a car in that lane and that when she first saw the man he came out from behind the car. When she referred to the man coming from behind that car, that would mean he came from behind the car from her, that would be in front of the car as it was proceeding." (Our italics)

When all of Midgette's testimony is considered, it is clear the expression, "the north lane, the left lane, the one farthest north," as used in his testimony on direct examination, refers to #1 as distinguished from #64 rather than to the dividing line between the two lanes of #1; and his expression, "the center portion of the road where there is no lane," as used in his testimony on direct examination, refers to the "V" or triangular area separating #1 and #64.

Defendant, in substance, testified: When approaching the point where #1 and #64 diverge, and when about 75 feet therefrom, she saw Rogers "standing on or near the pavement that divides these two main highways." He "was walking more or less in the same direction (she) was going . . ." He was on her right, had crossed #64; but she did not see him cross #64. She took the right lane of #1. She took her foot off the gas; and, when she blew her horn, he seemed to look around. Then "he began in a quickened walk or headlong motion onto (her) travelled portion of the road." She then applied her brakes "stronger" and swerved to the left lane of #1. The front of her car missed his body but something struck the car "about middleway". She continued to apply her brakes and stopped in about 25 feet. Looking back she saw the blow had been strong enough to cause him to fall to the pavement. She then parked her car and went back to see if there was anything she could do to help. When she saw the man (Rogers), "he looked like any ordinary man that was capable of

looking after himself . . ." She was "real surprised to hear that he was 77 years old. He seemed to be very active."

On cross-examination, defendant testified she didn't apply her brakes until she was "two car lengths away from him. He was in no danger from me whatsoever." She did not blow her horn until she was within 75 feet of him and did not "let off" her accelerator until she was within four car lengths. She was going about 15 miles per hour when the collision occurred. Pleasants and Midgette misunderstood her if they got the impression she said she saw this man "walking in a northerly direction from the southern edge of this highway across 54 feet of pavement to the northern edge of the highway." Rogers was not weaving or unsteady and did not give that appearance. He gave no indication that he was going to or was likely to go upon the highway in front of her until he actually did so.

Mrs. Carpenter's testimony was substantially in accord with that of defendant. According to Mrs. Carpenter: When she first observed Rogers he was "in the little paved portion" between the two highways. He "seemed to be walking, but not toward our lane." When he quickened his pace and "started on to our travelled portion of the road," defendant applied her brakes, swerved to the left and the front of her car passed him; but Rogers "kept right on coming toward the side of the car" and "walked into the right hand side of the door where (she) was sitting." Defendant stopped within "about two car lengths" beyond the point of collision. At the time of collision, the two left wheels of defendant's car were "off the highway".

Obviously, the testimony as to what defendant told the officers at the scene of the accident differs in several respects from evidence offered in behalf of defendant at the trial. While advertent to the rule that discrepancies and contradictions in the evidence must be resolved by the jury and not by the court, *White v. Lacey*, 245 N.C. 364, 369, 96 S.E. 2d 1, the question here is whether, under either version of what occurred, the evidence was sufficient for submission to the jury.

We think it clear, if defendant's evidence is accepted, there was no reason for defendant to anticipate that Rogers would walk from his place of safety, outside the traffic lanes, into the path of defendant's approaching car. Unless and until put on notice to the contrary, she had a right to act on the assumption the pedestrian would recognize her right of way and not obstruct it. *Grant v. Royal*, 250 N.C. 366, 368, 108 S.E. 2d 627, and cases cited. If defendant's evidence is accepted, she did all she reasonably could have done to

avoid striking Rogers after he stepped from his place of safety into the path of her car.

When we consider plaintiff's evidence, that is, the testimony as to defendant's statements to the officers at the scene of accident, this occurred: Defendant saw Rogers cross #64, from the south to the north side of #64, in front of a car proceeding on #64, at which time "he looked like he was kind of off balance, kind of running or trotting like he was trying to catch up himself," but he straightened up and stopped when he reached the center of the road "on that V-part." Nothing in the statement attributed to the defendant indicates Rogers was off balance or otherwise incapacitated or confused after he reached "that V-part". The only reasonable inference to be drawn from plaintiff's evidence is that Rogers gave such appearance when hurrying across #64 in front of a car proceeding thereon. We think it equally clear, if plaintiff's evidence is accepted, that defendant had no reason to anticipate that Rogers would walk from his place of safety, outside the traffic lanes, into the path of defendant's approaching car, and that defendant did all she reasonably could have done to avoid striking Rogers after he stepped from his place of safety into the path of her car.

Defendant was traveling in a 45 mile speed zone. She did not exceed this speed at any time and her speed was less when Rogers walked into her lane of travel. Whether defendant first saw Rogers when he was 200-300 feet away or when he was 75 feet away is immaterial. In either event, defendant, after she first saw Rogers, could have stopped her car before she reached the scene of accident if she had then undertaken to do so. The crucial question is whether she could have stopped before reaching the scene of accident after she saw or should have seen that Rogers was leaving or likely to leave his place of safety and walk into the traffic lane on which she was proceeding. We think the evidence insufficient to show that she could have done so.

If negligence on the part of defendant were conceded, we think the evidence so clearly establishes contributory negligence on the part of Rogers that no other reasonable inference or conclusion can be drawn therefrom. *Dennis v. Albemarle,* 242 N.C. 263, 87 S.E. 2d 561.

If Rogers had remained on the "V-part," outside the traffic lanes, he would have suffered no injury. He could and should have observed defendant's car, lawfully approaching in its lane of travel, fully as well as defendant could and should have observed him. Instead of first looking to ascertain whether he could do so in safety, he left his place of safety and walked into defendant's lane of travel. Not-

withstanding defendant swerved into the left lane, and thereby avoided striking him, Rogers continued to walk until he crossed the center line and walked into the right side of defendant's passing car.

While it appears defendant was unable to stop her car in time to avoid the accident, Rogers himself, by failing to take a single step, could have halted his forward progress sufficiently to have done so. Indeed, it appears he had the last clear chance to avoid the accident. As stated by *Higgins, J.*, in *Barnes v. Horney,* 247 N.C. 495, 498, 101 S.E. 2d 315: "Defendant's liability (under the last clear chance doctrine) is based upon a new act of negligence arising after negligence and contributory negligence have canceled each other out of the case."

The factual situation here is similar to that considered in *Jenkins v. Johnson,* 186 Va. 191, 42 S.E. 2d 319, cited with approval in *Garmon v. Thomas,* 241 N.C. 412, 85 S.E. 2d 589. This is a much stronger case for defendant than *Garmon v. Thomas, supra,* where plaintiff was held contributorily negligent as a matter of law. There, the plaintiff walked across the highway, without stopping, and had nearly reached the opposite side of the highway when struck by the right front portion of defendant's truck. The defendant did not swerve to his left or otherwise undertake to avoid striking plaintiff but continued in a direct line in his lane of travel. There, the defendant's truck struck a pedestrian who was walking across his line of travel. Here, defendant's car did not strike the pedestrian and no injury would have occurred but for the fact that Rogers continued to walk until he collided with the right side of defendant's car.

We have not overlooked the contention in plaintiff's brief that the triangular area, at the point from which Rogers entered the (south) traffic lane of #1, was only 9 inches wide, and hence could not be reasonably considered a place of safety. The only basis for this contention is indicated below.

Plaintiff offered in evidence a map made February 6, 1960, based on a survey, which shows the area from the Jones-Franklin intersection to and beyond (east) the "grassy plot" between #1 and #64. The surveyor indicated by an "X" the point where #1 and #64 diverge.

Midgette testified that he, while at the scene of collision on the morning of September 30, 1958, assisted by a State Highway patrolman, measured with a steel tape "the total width of the paved portion of the highway at the point where (he) found the man lying and that measured across there a total of 54 feet." Again: "This left 6 feet in the middle of those four lanes of travel which was a vacant place not used for vehicular traffic."

At plaintiff's request, Midgette put a mark on the map, an en-

circled "X" with the letter "A" beside it, indicating the point where Rogers was lying. Midgette's testimony, considered in context, shows plainly that he was indicating the position of Rogers with reference to the line dividing the two lanes of #1, that is, as being (as he testified) 18 inches north thereof. His testimony was explicit to the effect that the width of the triangular area at the place where Rogers was lying was 6 feet.

Plaintiff points out that the over-all width of the pavement at the point indicated on the map by Midgette as the place where Rogers was found, applying the scale of the map, measures 48.75 feet. Upon this basis, plaintiff contends, contrary to Midgette's explicit testimony, that the portion of the triangular area on which Rogers was standing or walking before he entered upon the traffic lanes of #1 was only 9 inches wide. Suffice to say, the evidence of Midgette, when considered in context, is insufficient to support this ingenious contention. The positive testimony of Midgette shows the width of the paved triangular area opposite the point where Rogers was lying on the road was six feet.

For the reasons stated, the judgment of nonsuit is affirmed.

Affirmed.

PARKER, J., dissents.