IDA BLAKE v. STEVE HODGES MALLARD.

(Filed 20 May, 1964.)

**1. Automobiles § 33—**

Evidence that plaintiff left a clubhouse on the east side of a highway seventy-five feet north of an intersection with a dirt road and that she crossed the highway and was struck on the western edge of the highway some twenty feet north of the intersection, discloses that plaintiff crossed the highway diagonally in a southwesterly direction and not at a crosswalk, and therefore she was required to yield the right of way to vehicular traffic. G.S. 20-174(a).

**2. Automobiles § 42k—**

While the failure of a pedestrian to yield the right of way to a motorist at a point other than a crosswalk is not contributory negligence *per se* but only evidence of contributory negligence, nevertheless when all of the evidence establishes his failure to yield the right of way as one of the proximate causes of his injury so clearly that no other reasonable conclusion is possible, nonsuit is proper.

**3. Automobiles § 33—**

It is the duty of a pedestrian in exercising ordinary care for his own safety to look for approaching traffic before attempting to cross a highway, and if the highway is a six-lane highway or the traffic heavy, to exercise vigilance commensurate with the danger.

**4. Same—**

Where a pedestrian crosses a highway at a place not a crosswalk and there is nothing to put a motorist on notice that the pedestrian is under

disability or oblivious to danger, the motorist is entitled to assume that the pedestrian will stop and yield the right of way, and is not required to anticipate negligence on the part of the pedestrian in deliberately stepping into his lane of travel.

**5. Automobiles § 42k—**

   Evidence tending to show that plaintiff pedestrian was walking in a southwesterly direction across a four-lane highway at a place other than a crosswalk, and that defendant motorist, traveling south, struck the pedestrian in his outside or westerly lane, and that the lights on defendant's car were burning and the road straight and unobstructed so that they could be seen for a mile, *is held* to disclose contributory negligence on the part of the pedestrian barring recovery as a matter of law.

APPEAL by plaintiff from *Stevens, E. J.,* September-October 1963 Session of DUPLIN.

   *Earlie C. Sanderson for plaintiff.*
   *Poisson, Marshall, Barnhill & Williams for defendant.*

SHARP, J.   Plaintiff, a pedestrian, was injured about 10:00 p.m. on May 28, 1962 when she was struck by the defendant's automobile as she attempted to cross U. S. Highway No. 117 from east to west near the northern limits of the Town of Wallace. She appeals from the judgment of nonsuit entered at the close of her evidence which tended to show these facts:

U. S. 117 runs generally north and south through Wallace. At the place where plaintiff was struck the highway is straight for a mile in both directions. It is sixty-six feet wide from curb to curb and consists of six lanes. A center line separates two lanes for traffic in each direction with an additional lane on each side for parking. The area is a thirty-five mile per hour speed zone and is without street lights. A dirt street, known as the Labor Camp Road, intersects U. S. 117 from the west. Fifty feet north of its northern margin, an unnamed dirt street enters U. S. 117 from the east. Each street forms a T intersection where it meets the highway. Fifteen feet north of the unnamed street on the east side of the highway is the Nightingale Clubhouse, also known as Cary's Place.

   Plaintiff, a sixty-five year old colored woman wearing dark clothing, left the clubhouse with a nineteen year old girl named Queen Ella James. They stood near the highway in front of the clubhouse and talked for a while before plaintiff left Queen Ella and started across the highway "walking normally" towards the Labor Camp Road. At that

time Queen Ella observed the defendant's automobile approaching from the north about two hundred yards away at a speed which she estimated at sixty miles per hour. Plaintiff testified that while she was crossing she "observed the traffic on the highway on the right and left." She also said, "I saw a car coming pretty fast, and I started to run. . . . When I first observed it, I reckon it was 45 feet from me." Plaintiff did not fix her location in the highway at that time but, according to Queen Ella, she started to run when she was in the fourth lane for traffic. Both the investigating officer and Queen Ella testified that plaintiff was hit approximately thirty-five feet north of the Labor Camp Road in the fourth traffic lane (outside lane for traffic going south) at the edge of the parking lane. Queen Ella said that she "did not go flying through the air when she got hit. She didn't get knocked too far . . . (she imagined) about 4 or 5 feet." When the investigating officer arrived at the scene at 10:10 p.m. he found plaintiff in the street about twenty feet north of the northern margin of the Labor Camp Road. Her right leg was broken; she was wildly hysterical and unable to talk. Upon an examination of defendant's automobile, the officer found a slight dent near the headlight in its right front fender. and a brush mark on the right bumper. The night was clear and defendant's car was equipped with headlights which were burning at the time of the accident. Both plaintiff and Queen Ella testified that defendant never sounded his horn, slackened his speed, nor turned his car until he struck plaintiff.

Plaintiff alleges that her injuries were proximately caused by defendant's negligence in that he operated his automobile at an illegal rate of speed, without keeping it under proper control, without keeping a proper lookout, and in that he failed to sound his horn or turn from his line of travel to avoid striking her as she attempted to cross the highway *at a pedestrian crosswalk.* Defendant denied any negligence on his part and, in the alternative, pled the contributory negligence of the plaintiff. He alleged that plaintiff, dressed in dark clothing, was standing in the center of the highway as he approached; that without any warning she suddenly darted into his lane of travel at a time and in a manner which made it impossible for him to avoid striking her.

The only question raised by this appeal is whether the court below erred in granting defendant's motion for nonsuit. If it be assumed that plaintiff's evidence makes out a *prima facie* case of actionable negligence against the defendant, the crucial question remains: Does plaintiff's evidence establish her own contributory negligence as a matter of law?

The record does not disclose the width of the unnamed dirt street which intersects U. S. 117, but since plaintiff began her trip across the highway from the Nightingale Clubhouse she must have started at least seventy-five feet north of the northern edge of the Labor Camp Road. She was struck twenty feet north of it near the western margin of the highway. Obviously, plaintiff was crossing the highway diagonally in a southwesterly direction and not at a crosswalk as she alleged. She was, therefore, required to yield the right of way to all vehicles upon the roadway. G.S. 20-174(a). Had she crossed in the vicinity of the Nightingale where the unnamed dirt street joined the highway she would have had the right of way over a motorist approaching that intersection, G.S. 20-173(a), but this she did not do.

The failure of a pedestrian crossing a roadway at a point other than a crosswalk to yield the right of way to a motor vehicle is not contributory negligence *per se;* it is only evidence of negligence. *Landini v. Steelman,* 243 N.C. 146, 90 S.E. 2d 377. However, the court will nonsuit a plaintiff-pedestrian on the ground of contributory negligence when all the evidence so clearly establishes his failure to yield the right of way as one of the proximate causes of his injuries that no other reasonable conclusion is possible. *Gamble v. Sears,* 252 N.C. 706, 114 S.E. 2d 677; *Barbee v. Perry,* 246 N.C. 538, 98 S.E. 2d 794; *Garmon v. Thomas,* 241 N.C. 412, 85 S.E. 2d 589; *Tysinger v. Dairy Products,* 225 N.C. 717, 36 S.E. 2d 246.

The law imposes upon a person *sui juris* the duty to use ordinary care to protect himself from injury. It was plaintiff's duty to look for approaching traffic before she attempted to cross the highway. Having started, it was her duty to keep a lookout for it as she crossed. *Rosser v. Smith,* 260 N.C. 647, 133 S.E. 2d 499. Having chosen to walk diagonally across a six-lane highway, vigilance commensurate with the danger to which plaintiff had exposed herself was required of her. According to plaintiff's evidence, defendant was two hundred yards away, approaching at a speed of sixty miles per hour when she started "walking normally" into his path on a southwesterly course. It behooved her to keep his approaching vehicle under constant surveillance. Instead, she continued into the path of an automobile which had been approaching on a thoroughfare, straight for a mile in the direction from which it came. Apparently she paid it no heed until she entered its lane of travel when it was only forty-five feet away. Had defendant been going twenty miles per hour when plaintiff stepped into his path, he could not have stopped in time to avoid the accident. Plaintiff by simply standing still in the inside lane could have done so.

Plaintiff is an adult woman. So far as this record discloses she was under no disability, and there was nothing to put defendant on notice

that she was oblivious to his approach or that she would fail to stop and yield him the right of way. Under those circumstances he was not required to anticipate negligence on her part. *Griffin v. Pancoast,* 257 N.C. 52, 125 S.E. 2d 310; *Tysinger v. Dairy Products, supra.*

In *Jenkins v. Thomas,* 260 N.C. 768, 133 S.E. 2d 694, the plaintiff was struck by defendant's automobile while walking at night diagonally across U. S. Highway 321 in Gastonia. The court's comment in affirming a judgment of nonsuit in that case is applicable here:

> "Plaintiff elected not to cross at a point where he had the right of way, but elected to cross at a point where the motorist had the right of way. Defendants, having the right of way, had the right to assume, until put on notice to the contrary, that the pedestrian would obey the law and yield the right of way. The mere fact that the pedestrian is oblivious to danger does not impose a duty on the motorist to yield the right of way. That duty arises when, and only when, the motorist sees, or in the exercise of reasonable care should see, that the pedestrian is not aware of the approaching danger and for that reason will continue to expose himself to peril."

Assuming, for the purpose of passing upon the motion for nonsuit, that defendant was operating his vehicle at sixty miles per hour and that he failed to sound his horn, nevertheless he was travelling in the proper lane for southbound traffic and if plaintiff had looked she would have seen his automobile, the lights of which were visible for a mile. Its speed did not suddenly bring it into her range of vision after she had looked when it was not visible. The observation of *Denny, J. (now C.J.)* in *Garmon v. Thomas, supra,* is pertinent in this regard:

> "Conceding, however, that the defendant should have seen the plaintiff and given him warning of his approach, the plaintiff was at all times under the duty to see the defendant and to yield the right of way to him. In our opinion, both parties were negligent. The defendant was negligent in failing to exercise due care to avoid colliding with the plaintiff on the highway, . . . and the plaintiff was negligent in failing to exercise reasonable care for his own safety in that he failed to keep a timely lookout to see what he should have seen and could have seen if he had looked. . . . The facts compel the view that the defendant's truck was near the plaintiff and plainly visible to him if he had looked at the time he walked into its path. 'There are none so blind as those who have eyes and will not see'."

Incidentally, it is noted that the same witness who estimated defendant's speed at sixty miles per hour said that she did not "go flying through the air" after the impact which, she imagined, "knocked plaintiff only 4 to 5 feet." These two estimates would seem to be incompatible and "contrary to human experience." *Tysinger v. Dairy Products, supra.*

It is manifest from the plaintiff's evidence, which is all the evidence, that her own negligence was at least a proximate cause of her injuries, if indeed it were not the sole proximate cause. No other conclusion can reasonably be drawn. Therefore, the judgment of nonsuit must be affirmed. *Rosser v. Smith, supra.*

The nonsuit in this case might have been sustained because of a material variance between plaintiff's allegations and her proof. *Hall v. Poteat,* 257 N.C. 458, 125 S.E. 2d 924. However, in disposing of the motion we have preferred to do it upon the plaintiff's evidence.

Affirmed.