MANSFIELD M. DENDY v. JAMES P. WATKINS

No. 65

(Filed 5 November 1975)

Automobiles §§ 62, 83— striking pedestrian — negligence — contributory
  negligence — summary judgment

  In an action to recover for injuries sustained by plaintiff pedestrian when he was struck by defendant's car, the trial court properly entered summary judgment for defendant on grounds that there was no genuine issue of fact as to negligence by defendant and that plaintiff was contributorily negligent as a matter of law where the evidence at the hearing showed that plaintiff attempted to cross the southbound three lanes of a street in Fayetteville, N. C. at 5:00 p.m. in the middle of the block at a place that was neither a marked nor unmarked crosswalk, that plaintiff walked diagonally at a forty-five degree angle between stopped vehicles in the first two lanes, that before entering the third lane plaintiff looked to the north but saw

no oncoming traffic, that except for vehicles, plaintiff had an unobstructed view to the north for one-half mile, that plaintiff had moved eight to nine feet into the third lane when he was struck by defendant's vehicle, that defendant's car was traveling only thirty mph, that there were thirty-nine feet of skid marks straight down the third lane, and that defendant was able to stop his car almost instantaneously upon striking plaintiff.

ON *certiorari* to review the decision of the North Carolina Court of Appeals, reported in 26 N.C. App. 81, 214 S.E. 2d 602 (1975), reversing and remanding judgment of *Lanier, J.*, 22 November 1974 Session of CUMBERLAND County Superior Court.

The uncontradicted evidence of existing facts at 5:00 p.m. on 6 April 1970, the time of the injury is as follows:

Raeford Road, or U. S. 401, in the City of Fayetteville, runs generally north and south. It consists of six lanes, each twelve feet in width, equally divided in the center by a concrete median strip, having three lanes for southbound traffic and three lanes for northbound traffic. An A & P store parking lot occupies the entire block on the west side of Raeford Road between Emerline Avenue and Fairfield Road. Electric traffic signals control traffic at the Raeford-Fairfield Road intersection. The speed limit was forty-five miles an hour. At the point of plaintiff's injury there was unobstructed visibility for one-half of a mile looking north, except for vehicular traffic. Just prior to plaintiff's injury, defendant was proceeding south on Raeford Road at a speed of approximately thirty miles per hour in the third or inside easternmost lane for southbound traffic, some distance south of Emerline Avenue. Traffic in both of the first two lanes for southbound traffic was backed up the entire length of the block from Fairfield Road to Emerline Avenue because the traffic light was red. At this time plaintiff commenced to cross Raeford Road diagonally in a southeasterly (forty-five degree angle) direction from the A & P parking lot at a point where there was neither an intersection nor a marked crosswalk. After the plaintiff walked between two cars in the second lane and entered the third lane, the defendant tried to stop his automobile by applying his brakes. Nevertheless, his right front fender struck and injured the plaintiff. The automobile came to rest almost immediately after impact at a left angle toward the concrete median strip. From that point there were three feet of skid marks north to some debris and the

skid marks continued in a northerly direction in a straight line in the third lane for thirty-nine feet. The impact point was one hundred fifty feet from the Raeford Road-Emerline Avenue intersection.

In his complaint the plaintiff alleged that the defendant was negligent in the following manner:

a. He overtook and passed another motor vehicle which was stopped to permit a pedestrian to cross the roadway, at a marked crosswalk or at an unmarked intersection;

b. He drove in a careless and reckless manner;

c. He drove at an excessive and unlawful rate of speed;

d. He failed to decrease speed when approaching and crossing an intersection, and when a special hazard existed ahead with respect to pedestrians;

e. He failed to keep a proper lookout;

f. He failed to keep said vehicle under control.

The defendant, in his answer, denied all the material allegations of the complaint and pled the affirmative defense of contributory negligence.

In support of his motion for summary judgment, defendant submitted a portion of an adverse examination taken of the plaintiff tending to show the following: When he (plaintiff) approached the curb at the western edge of Raeford Road, some thirty feet from the Raeford Road-Emerline Avenue intersection, he looked both ways and saw that the traffic light to the south was red and that traffic was backed up from Fairfield Road to Emerline Avenue in the first two lanes. The automobiles in the third lane were backed up to within a couple of car lengths of where plaintiff crossed the road. He did not observe any traffic coming from the north. He proceeded to walk across the first lane and stopped. He was walking diagonally in a southeast direction, passing between the stopped vehicles. After he crossed the second or center lane, he looked to the right (at the Fairfield Road intersection) and the traffic light was still red. He looked to the left and saw nothing coming. When he was about three or four feet from the concrete median strip, he looked to the right and the traffic light had turned green. Almost simultaneously he looked to the left and heard pressure on wheels. Defendant's vehicle was then about fifteen feet away.

The plaintiff testified at the adverse hearing: "I could not swear to where he came from, but he flat didn't come straight down the Raeford Road. I guess that is because I did not see him."

The defendant offered an affidavit indicating that he had been on Raeford Road for about one-half of a mile and was traveling in a southwardly direction in the left lane next to the concrete median strip. He continued to proceed in that lane through the Emerline Avenue intersection for a distance of more than one hundred feet beyond it when plaintiff suddenly darted from in front of an automobile on his right into the center lane of southbound traffic a short distance ahead. The plaintiff was two to three car lengths ahead of defendant at the time. Defendant slammed on his brakes, turned his vehicle to the left, but was unable to completely avoid striking plaintiff. At the time, traffic in the two southbound lanes had commenced to move ahead slowly.

The trial court thereupon rendered summary judgment for the defendant "for that there is no genuine issue of liability on the part of the defendant and that it appears that plaintiff is guilty of contributory negligence as a matter of law and the court, after reviewing the pleadings, the adverse examination of plaintiff, the affidavit of defendant and hearing the testimony of the investigating police officer and argument of counsel, finding that the motion for summary judgment in favor of defendant should be allowed for that there is no genuine issue of liability on the part of the defendant and also that plaintiff, on the occasion complained of, was guilty of contributory negligence as a matter of law."

*Doran J. Berry and Kenneth Glusman for plaintiff appellee.*

*Nance, Collier, Singleton, Kirkman & Herndon by Rudolph G. Singleton, Jr., for defendant appellant.*

COPELAND, Justice.

Did the Court of Appeals err in reversing summary judgment entered by the trial court in favor of the defendant? The answer depends upon whether the defendant has carried the "burden of clearly establishing the lack of any triable issue of fact by the record properly before the court." *Singleton v. Stew-*

*art,* 280 N.C. 460, 465, 186 S.E. 2d 400, 403 (1972). 6 Moore's Federal Practice (2d ed. 1975) § 56.15 [3] (hereinafter cited as Moore) ; *Caldwell v. Deese,* 288 N.C. 375, 218 S.E. 2d 379 (1975).

Rule 56 of Chapter 1A-1 of the General Statutes in part provides:

"(b) *For defending party.*—A party against whom a claim, counterclaim, or crossclaim is asserted or a declaratory judgment is sought, may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof.

"(c) *Motion and proceedings thereon.*—The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is *no genuine issue as to any material fact* and that any party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is genuine issue as to the amount of damages. Summary judgment, when appropriate, may be rendered against the moving party.

"(e) *Form of affidavits; further testimony; defense required.*—Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest *upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.* If he does not so respond, summary judgment, if appropriate, shall be entered against him." (Emphasis supplied.)

Federal Rule 56 is substantially the same as Rule 56 of Chapter 1A-1 of the General Statutes and, therefore, it is proper for us to look at the federal decisions and textbooks as well as our own for guidance in applying the rule.

When the motion for summary judgment comes on to be heard, the court may consider the pleadings, depositions, admissions, affidavits, answers to interrogatories, oral testimony and documentary materials; and the court may also consider facts which are subject to judicial notice and any presumptions that would be available at trial. Moore, *supra*, § 56.11 [7], [8], [9], [10]; *Singleton v. Stewart, supra.* "The obvious purpose of summary judgment is to save time and expense in cases where there is no 'genuine issue' as to any material fact. It is generally held that the motion should not be granted unless it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law. . . . If there is a factual issue, it must be material as well as genuine to put it beyond the scope of summary judgment." Gordon, The New Summary Judgment Rule in North Carolina, 5 Wake Forest Intra. Law Rev. 87, 91. So the motion must be denied if there is any issue of genuine material fact. *Kessing v. Mortgage Corp.,* 278 N.C. 523, 180 S.E. 2d 823 (1971).

As indicated above, the burden is upon the moving party to establish the lack of any triable issue of fact. The papers of the moving party are carefully scrutinized and "those of the opposing party are on the whole indulgently regarded." Moore, *supra*, § 56.15 [8] at 2440. Our question is whether there is a material issue of fact concerning actionable negligence on the part of the defendant.

"In determining whether the moving party has satisfied his burden it is helpful to refer to the theory underlying a motion for a directed verdict, for functionally the motion for summary judgment and the motion for a directed verdict are closely akin to each other. . . . In other words, if it is clear that a verdict would be directed for the movant on the evidence presented at the hearing on the motion for summary judgment, the motion for summary judgment may properly be granted." Moore, *supra*, § 56.15 [3] at 2341.

The plaintiff relies on *Landini v. Steelman,* 243 N.C. 146, 90 S.E. 2d 377 (1955) and *Bass v. Roberson,* 261 N.C. 125, 134 S.E. 2d 157 (1964), to sustain his position that the court erred

in finding there was no genuine issue of liability on the part of the defendant.

In *Landini* the Court reversed a judgment of nonsuit in favor of defendant based on defendant's lack of negligence and plaintiff's contributory negligence. Plaintiff had alighted from a bus in the nighttime and was attempting to cross a highway in the middle of a block. She testified that she looked both ways before attempting to cross and was about two-thirds of the way across the highway when she first saw the lights of defendant's automobile suddenly come on. In addition, there was evidence that defendant's vehicle was going seventy miles per hour in a forty-five mile per hour zone. The Court distinguished this case from two cases analogous to ours, *Garmon v. Thomas,* 241 N.C. 412, 85 S.E. 2d 589 (1955) and *Tysinger v. Dairy Products,* 225 N.C. 717, 36 S.E. 8d 246 (1945). Specifically in *Garmon* it was held that nonsuit should have been allowed for the reason that the plaintiff pedestrian was guilty of contributory negligence as a matter of law. The Court reasoned that the plaintiff had a duty to see the defendant and yield the right-of-way to him since the injury occurred in the daylight, outside a residential or business district and there was no evidence of excessive speed on the part of the defendant. In *Tysinger* the Court held that nonsuit on account of defendant's lack of negligence and plaintiff's contributory negligence was properly granted in favor of defendant for similar reasons where the plaintiff pedestrian had an unobstructed view in the daytime of three hundred yards in the direction of defendant's oncoming truck and then stepped off the edge of the road into the side of the truck.

The *Bass* case, also relied on by the plaintiff, was described by Chief Justice Denny as "a borderline case." *Bass v. Roberson, supra,* 261 N.C. at 127, 134 S.E. 2d at 158. The plaintiff's evidence, which indicated that he was struck in the middle of the northbound lane by defendant's southbound vehicle, was substantially different from that in our case. Also, the court, in holding that the evidence was sufficient to require submission of negligence to the jury, generally refrained from discussing the evidence and awarded a new trial on the basis of the charge of the court.

*Landini* and *Bass* appear to be clearly distinguishable from our case.

Our facts indicate that the plaintiff entered the southbound lanes of Raeford Road thirty feet from the intersection of Raeford Road and Emerline Avenue adjacent to the A & P parking lot when the traffic in the first two lanes was backed up the entire length of the block from the Fairfield traffic signal to Emerline Avenue. The plaintiff did not recall seeing any oncoming traffic from the north. He proceeded in a southeasterly direction (diagonally) across the first two southbound lanes by jaywalking between the cars that stood bumper to bumper. The plaintiff indicated in the adverse examination that before going into the third lane, he looked to the left and saw no oncoming cars. The third lane was only twelve feet wide and plaintiff was about one hundred and fifty feet from the intersection at this time. Except for vehicles, he had an unobstructed view to the left for one-half of a mile. The plaintiff said he was struck when he was three or four feet from the concrete median strip. If this was so, he had only moved eight to nine feet after he had looked to the left and saw nothing coming. The plaintiff further volunteered the information that if defendant's vehicle had been coming straight down the road, there was nothing to prevent him from seeing it.

Our Court, in *Jenkins v. Thomas,* 260 N.C. 768, 133 S.E. 2d 694 (1963), affirmed the judgment of nonsuit upon evidence which disclosed that a pedestrian, instead of crossing at an intersection where he had the right-of-way, elected to cross one hundred feet south of the intersection and was then struck by the defendant motorist who was traveling with his lights on at twenty-five miles per hour in a thirty-five mile per hour zone. There was no showing that the defendant was aware that plaintiff was oblivious of danger. The Court said in part "Plaintiff elected not to cross at a point where he had the right of way, but elected to cross at a point where the motorist had the right of way. Defendants, having the right of way, had the right to assume, until put on notice to the contrary, that the pedestrian would obey the law and yield the right of way. The mere fact that the pedestrian is oblivious to danger does not impose a duty on the motorist to yield the right of way. That duty arises when, and only when, the motorist sees, or in the exercise of reasonable care should see, that the pedestrian is not aware of the approaching danger and for that reason will continue to expose himself to peril. [Citations omitted.]" *Id.* at 769.

The facts of *Jenkins* are strikingly similar to the facts of our case. There is absolutely nothing in our record to indicate that the defendant ever saw the plaintiff or by the exercise of reasonable care could have seen him prior to the time he emerged from between the cars in the first and second lanes. In this kind of situation, a duty rests on the defendant only when he sees, or in the exercise of reasonable care should have seen, that the pedestrian is not aware of the approaching danger and for that reason will continue to expose himself to peril. From the record there is obviously no way that the defendant could have seen the plaintiff until he appeared in the third lane. Defendant was traveling at a reasonable and prudent speed under the circumstances, which is indicated from the fact that he was able to stop the car almost instantaneously. "[T]he evidence must do more than raise a suspicion, conjecture, guess, possibility or chance; it must reasonably tend to prove the fact in issue, or reasonably conduce to its conclusion as a fairly logical and legitimate deduction." 2 Stansbury, N. C. Evidence § 210 at 153 (Brandis Rev. 1973).

The plaintiff offered no evidence or counter-affidavits to those of defendant. The trial judge was left with only the naked allegations of the plaintiff's complaint and such inferences as could be gathered from his adverse examination offered by the defendant. The uncontroverted and physical facts negate any genuine issues of material facts that arise from the allegations of the complaint. Rule 56(e) of Chapter 1A-1 of the General Statutes provides in part as follows: "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

Thus, we conclude that there is no genuine issue as to any material fact. As this Court has previously stated, "It is only in exceptional negligence cases that summary judgment is appropriate." *Page v. Sloan*, 281 N.C. 697, 706, 190 S.E. 2d 189, 194 (1972). *Accord, Caldwell v. Deese, supra.* However, where, as here, there is no genuine issue of material fact and reasonable men could only conclude that defendant was not negligent, then a motion for summary judgment is proper.

The trial court also granted defendant's motion for summary judgment on the ground that the plaintiff was contributorily negligent as a matter of law. Therefore, it is proper for us briefly to consider the merits of this ruling. To support his position, defendant properly relied upon many cases from our Court where a judgment of nonsuit on the basis of the plaintiff's contributory negligence was granted, chiefly *Blake v. Mallard*, 262 N.C. 62, 136 S.E. 2d 214 (1964). The facts in *Blake* are that the pedestrian left a clubhouse on the east side of a six-lane highway, some seventy-five feet from an intersection. He proceeded to cross the highway diagonally and was struck on the western edge, some twenty feet north of the intersection. These facts are strikingly similar to our case and indicate that the crossing was not at a place permitted by G.S. 20-174(a) which reads as follows: "Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway." Our decisions hold that a failure to yield the right-of-way is not contributory negligence *per se*, but rather that it is only evidence of negligence to be considered with other evidence in the case in determining whether the plaintiff is chargeable with negligence which proximately caused or contributed to his injury. *Landini v. Steelman, supra.*

As indicated by Justice Sharp (now Chief Justice) in *Blake v. Mallard, supra,* 262 N.C. at 65, 136 S.E. 2d at 216-17, "The law imposes upon a person *sui juris* the duty to use ordinary care to protect himself from injury. It was plaintiff's duty to look for approaching traffic before she attempted to cross the highway. Having started, it was her duty to keep a lookout for it as she crossed. *Rosser v. Smith,* 260 N.C. 647, 133 S.E. 2d 499. Having chosen to walk diagonally across a six-lane highway, vigilance commensurate with the danger to which plaintiff had exposed herself was required of her." *Accord, Carter v. R.R.,* 256 N.C. 545, 124 S.E. 2d 561 (1962).

All the evidence indicates that the plaintiff proceeded to cross the southbound three lanes in the middle of the block at 5:00 p.m. in Fayetteville, North Carolina, at a place where the heavy traffic was stopped because of a red light. The plaintiff walked diagonally at a forty-five degree angle between stopped vehicles in the first two lanes. He said that he looked to the north, but saw nothing. The thirty-nine feet of skid marks

straight down the third lane, the undisputed slow speed of approximately thirty miles per hour of defendant's car, and the other evidence in the case clearly indicate that defendant's vehicle was approaching from the north when the plaintiff entered the third lane. If he had looked, he would have seen the vehicle. A pedestrian who crosses the street at a point where he does not have the right-of-way must constantly watch for oncoming traffic before he steps into the street and while he is crossing. *Anderson v. Carter,* 272 N.C. 426, 158 S.E. 2d 607 (1968) ; *Price v. Miller,* 271 N.C. 690, 157 S.E. 2d 347 (1967) ; *Rosser v. Smith,* 260 N.C. 647, 133 S.E. 2d 499 (1963) ; *Garmon v. Thomas, supra. See also Tysinger v. Dairy Products, supra.*

The trial court correctly concluded that the plaintiff was guilty of contributory negligence as a matter of law. "There are none so blind as those who have eyes and will not see." *Baker v. R.R.,* 205 N.C. 329, 331, 171 S.E. 342, 343 (1933).

The decision of the Court of Appeals is

Reversed.